**GREAT AMERICAN INSURANCE COMPANY, Plaintiff,**

v.

**CALLI HOMES, INC., Defendant.**

**Civil Action No. H–01–3457.**

United States District Court,
S.D. Texas,
Houston Division.

Sept. 20, 2002.

Brian Lynn Blakeley, Brian L. Blakeley and Associates, San Antonio, TX, for plaintiff.

William C. Ferebee, O'Donnell Ferebee, Houston, TX, for defendant.

## MEMORANDUM AND ORDER

ROSENTHAL, District Judge.

This insurance coverage dispute raises the issue of the insurer's duty to defend a lawsuit alleging that the insured, a homebuilder, negligently constructed or supervised the construction of a home, particularly with respect to the installation of the Exterior Insulation and Finish System ("EFIS"). The underlying plaintiff homeowners alleged ongoing property damage as a result of defective construction. The issue is the insurer's duty to defend under the commercial general liability policy it issued the homebuilder.

Calli Homes, Inc., the homebuilder, has moved for partial summary judgment declaring that the insurer, Great American Insurance Company, has a duty to defend the underlying suit. (Docket Entry No. 9). Great American Insurance cross-moved for summary judgment that the policies provided no coverage and imposed no duty to defend because the underlying lawsuit alleged no "occurrence" within the policy period and that the designated work policy exclusion applied. (Docket Entry No. 11). Calli Homes has filed a response.

This court has carefully reviewed the pleadings, the motions and responses, the policy language, the parties' submissions, and the applicable law. Based on this review, this court grants Calli Homes's motion for partial summary judgment as to the duty to defend, denying Great American's cross-motion for summary judgment.

The reasons for these rulings are set out below.

## I. Background

### A. The Underlying Lawsuit

Jean Snytka, individually, and Richard J. and Jean Snytka, co-trustees of the Harry J. Snytka Living Trust, sued Calli Homes, as well as subcontractors, inspectors, and realtors involved in the construction and sale of the home at issue. The suit alleged that plaintiffs discovered the improper installation of the exterior veneer of the home during an inspection on April 7, 2000. The inspection occurred in connection with the pending sale of the home. The potential purchaser terminated the sale. Plaintiffs had a more extensive inspection performed, which revealed a "myriad of conditions reflective of negligent construction of the Residence by Calli and/or subcontractors under Calli's supervision," that caused "collateral damage to structural, mechanical and electrical components of the residence." (Docket Entry No. 9, Ex. D, p. 7). Plaintiffs alleged property damage "of an ongoing nature" including "cost of repair and diminution of value damages" and personal injury and mental anguish damages. (*Id.*, p. 8).

In the Fourth Amended Petition, (Docket Entry No. 9, Ex. D), the underlying plaintiffs asserted causes of action for negligence in constructing the residence, negligence in oversight and supervision of the construction, gross negligence, violations of the Texas Deceptive Trade Practices Act, Tex. Bus. & Comm.Code § 17.45(b)(5), (7), (12), (19), and (23), and breach of express and implied warranty; and violations of the Residential Construction Liability Act. Calli Homes demanded a defense and indemnification from its Commercial General Liability ("CGL") insurance provider. Great American Insurance provided Calli Homes with CGL insurance under policies with effective dates beginning July 1, 1995 and continuing on an annual basis until July 1, 2000. Great American Insurance sued, seeking a de-

claratory judgment that it owes no duty to defend or to indemnify Calli Homes for the claims against it in the underlying lawsuit. Calli Homes moved for partial summary judgment, asserting that under the Texas "eight corners" rule, the allegations in the underlying lawsuit give rise to a duty to defend under the Great American Insurance CGL policy. Great American Insurance cross-moved for summary judgment, arguing that the underlying lawsuit did not allege an "occurrence" within the CGL policy. Great American Insurance also asserted that exclusions in the policy precluded coverage. (Docket Entry No. 11). Calli Homes responded to each of these arguments.

## B. The Policy Terms

The policy provided, in part:

Coverage A. Bodily Injury and Property Damage Liability

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance policy applies. We will have the right and duty to defend any "suit" seeking those damages.

. . . . .

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) the "bodily injury" or "property damage" occurs during the policy period.

(Docket Entry No. 11, Ex. A, Section 1, Coverage A, p. 1). The policy defined "bodily injury," "occurrence," and "property damage," as follows:

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

. . . . .

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . . . .

15. "Property damage" means:

a. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

(*Id.*, Section V).

The policy also contained certain exclusions. Great American Insurance relies on the "designated work" endorsement that precludes coverage for claims arising from work relating to the application of the type of synthetic stucco known as Exterior Insulation and Finish System, or EFIS.[1] The

---

1. Exclusion j.(6) states that the policy does not apply to:

j. "Property damage" to:

. . . . .

(6) that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

(*Id*). The policy provides that the exclusion in Paragraph (6) does not apply to "property damage" included in the "products-completed operations hazard." The definition of "products-completed operations hazard" includes " 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except ... (2) work that has not yet been completed or abandoned." Work is completed when the "work called for in [the] contract has been

policy excludes the installation and application of an Exterior Insulation and Finish System from coverage for "property damage" included in the "products-completed operations hazard" and arising out of "your work." (Docket Entry No. 9, Ex. C). The parties dispute the applicability of this exclusion.

Calli Homes moved for partial summary judgment that Great American Insurance has a duty to defend in the underlying lawsuit. Great American Insurance cross-moved for summary judgment that there is no coverage and that the exclusions apply. Each motion is examined below.

## II. The Applicable Legal Standards

 Under Texas law, "[a]n insurer's duty to defend is determined by the allegations in the pleadings and the language of the insurance policy." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997). "The duty to defend is determined by examining the latest amended pleading upon which the insurer based its refusal to defend the action." *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 701 (5th Cir.1996). The court compares the four corners of the insurance policy with the four corners of the plaintiff's pleading to determine whether any claim alleged by the pleading is potentially within the policy coverage. The duty to defend is determined "without reference to the truth or falsity of such allegations."

*Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex.1973); *see also St. Paul Ins. Co. v. Texas Dep't of Transp.*, 999 S.W.2d 881, 885 (Tex.App.—Austin 1999, pet. denied).

 The insured bears the initial burden of showing that a claim against him is potentially within the scope of coverage. If the insurer relies on an exclusion, the burden is on the insurer to prove that one or more of the exclusions apply. Once the insurer has proven that an exclusion applies, the burden shifts back to the insured to show that the claim falls within an exception to the exclusion. *See Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 723 (5th Cir.1999); *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir.1998).

 Insurance policies are interpreted under the rules of construction that apply to contracts generally. *See Sharp v. State Farm Fire & Cas. Ins. Co.*, 115 F.3d 1258, 1260 (5th Cir.1997) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)). "[I]f the insurance contract is expressed in plain and unambiguous language, a court cannot resort to the various rules of construction." *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987). "It is well-established that ambiguities in insurance contracts are to be strictly construed against the insurer." *Sharp*, 115 F.3d at 1260–61 (citing *Puckett v. U.S.*

completed, even if it needs repair or replacement." (Docket Entry No. 9, Ex. E).
 Exclusion I, "Damage to your work," excludes coverage as follows:
 "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
 This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

*(Id.).* Calli Homes asserts that Exclusion J(6) is deleted as to property damage included in the products-completed operations coverage and that Exclusion I does not apply because the underlying petition alleges that the property damage occurred because of the negligent supervision of subcontractors. Great American does not cross-move for summary judgment except as to the EFIS exclusion.

*Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984)). However, this rule applies only if the contract is ambiguous. *See id.* at 1261. Whether a contract is ambiguous is a question of law for the court to decide. *See CBI Indus.*, 907 S.W.2d at 520 (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). "The fact that the parties disagree as to coverage does not create an ambiguity, nor may extrinsic evidence be admitted for the purpose of creating an ambiguity." *Sharp*, 115 F.3d at 1261.

■■■ The duty to indemnify is separate and distinct from the duty to defend. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 822 (Tex.1997). An insurer's duty to indemnify is not based on the pleadings in the underlying lawsuit, but "is triggered by the actual facts establishing liability in the underlying lawsuit." *Id.* at 821; *see also Data Specialties, Inc. v. Transcon. Ins. Co.*, 125 F.3d 909, 911 (5th Cir.1997). The duty to defend is broader than the duty to indemnify. *Taylor v. Travelers Ins. Co.*, 40 F.3d 79, 81 (5th Cir.1994). If the insurer has no duty to defend the insured, no duty to indemnify is present. *Lay v. Aetna Ins. Co.*, 599 S.W.2d 684, 687 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.).

## III. Damage Caused by an "Occurrence"

The CGL policy provides liability coverage for "property damage" caused by an "occurrence." The policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Docket Entry No. 11, Ex. A). "Accident" is not defined. The threshold issue is whether the underlying plaintiffs alleged in the latest state court petition that the damage to their house was caused by an "occurrence."

■■■ The Texas Supreme Court has held that an injury caused "by voluntary and intentional conduct is not an accident just because the result or injury may have been unexpected, unforeseen, and unintended ... [although,] the mere fact that an actor intended to engage in the conduct that gave rise to the injury does not mean that the injury was not accidental." *Mid–Century Ins. Co. of Texas v. Lindsey*, 997 S.W.2d 153, 155 (Tex.1999).[2] Courts applying Texas law must examine whether the conduct was intentional and whether the resulting damage was the natural and probable result of an intentional act. *See Hartrick v. Great Am. Lloyds Ins. Co.*, 62 S.W.3d 270, 277 (Tex.App.—Houston [1st Dist.] 2001, no pet.). Within this analytical framework, the courts have taken different approaches to determining whether allegations of negligent construction allege an "occurrence" within a CGL policy.

Courts have held that allegations of failure to comply with design or engineering specifications, as opposed to general allegations of negligent workmanship, are not accidental but intentional, and produce foreseeable injury. *See, e.g., Acceptance Ins. Co. v. Newport Classic Homes, Inc.*, 2001 WL 1478791, *3 (N.D.Tex. Nov.19, 2001) (no occurrence where plaintiffs alleged that builder failed to comply with specifications as opposed to alleging negligence broadly) (citing cases); *Hartrick*, 62 S.W.3d at 277 (no duty to indemnify for jury's finding that insured home builder

2. *Mid–Century* involved a shotgun injury caused by a boy attempting to enter his father's truck through the rear window, because the doors were locked. The boy unintentionally caused a shotgun in the truck's gun rack to discharge. 997 S.W.2d at 155.

The Texas Supreme Court held that unintentional discharge of a shotgun from an adjacent parked truck was not reasonably foreseeable and was an "accident" under the uninsured motorist provision of an auto insurance policy.

failed to prepare soil and construct foundation properly, resulting in damage to house and loss of market value);[3] *Malone v. Scottsdale Ins. Co.,* 147 F.Supp.2d 623 (S.D.Tex.2001) (no occurrence where underlying petition against insured builder alleged failure to construct improvements according to specifications).

In other cases, the courts have recognized that allegations of negligently performed work are covered as an "occurrence." These courts reason that although the work was voluntarily and intentionally performed, it was undertaken with the intent to perform properly and the consequences of inadvertent construction defects are "accidental."

In *Federated Mut. Ins. Co. v. Grapevine Excavation Inc.,* 197 F.3d 720 (5th Cir. 1999), the Fifth Circuit held that the underlying petition alleged an occurrence by asserting a cause of action for negligence as to the insured subcontractor's use of materials that did not comply with the subcontract specifications. The court held that the term "occurrence" included the consequences of inadvertent construction defects.

> In cases involving claims against an insured for damage arising out of his alleged negligence, ... a ... line of cases has developed, following *Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.*[, 416 S.W.2d 396 (Tex.1967)] (the "Orkin line").
>
> In *Orkin,* the Texas Supreme Court was called on to resolve an insurance dispute arising out of a suit brought by Gulf Coast Rice Mills against an exterminator for damage to rice caused by the application of pesticide in the rice mill's facilities. A jury in the underlying case found that Orkin had acted negligently in its application of the pesticide in Gulf Coast's premises and that such negligence was the proximate cause of damage to the rice. In the insurance litigation that ensued, the supreme court concluded that the damage for which Orkin had been held liable was caused by an "accident" within the meaning of the applicable insurance policy. In reaching this conclusion, the court construed the term "accident" to "include negligent acts of the insured causing damage which is undesigned and unexpected."
>
> Following *Orkin,* both state and federal courts in Texas have interpreted the terms "accident" and "occurrence" to include damage that is the "unexpected, unforeseen or undesigned happening or consequence" of an insured's negligent behavior. Many of these cases have involved claims for damage caused by an insured's defective performance or faulty workmanship....

197 F.3d at 726.

The court compared the "occurrence analysis" applied to cases involving underlying actions that allege intentional torts and underlying actions that allege negligent conduct. Allegations falling in the first category are not within policy coverage because there is no "accident" and no "occurrence." Allegations in the second category are covered because the consequences of negligently created or inadvertent defects are "accidental." *Id.*

 In the present case, the allegations included both general allegations of negligence in Calli Homes's construction and supervision of subcontractors and the

---

**3.** *Hartrick v. Great Am. Lloyds Ins. Co.,* 2000 WL 1159603 (Tex.App.—Hous. [1st Dist.] Aug. 17, 2000)(*Hartrick I*), was withdrawn and superceded by *Hartrick v. Great Am. Lloyds Ins. Co.,* 2001 WL 870072 (Tex.App.—Hous. [1st Dist.] Aug. 02, 2001)(*Hartrick II*), which, in turn, was withdrawn and superceded by *Hartrick v. Great Am. Lloyds Ins. Co.,* 62 S.W.3d 270 (Tex.App.—Houston [1st Dist.] 2001)(*Hartrick III*).

allegation that Calli Homes deviated from the installation practices for installing an EFIS exterior. There is no allegation that Calli Homes intentionally performed substandard work or intentionally failed to follow specifications. The underlying plaintiffs did not allege that Calli Homes had actual knowledge that it did not properly install the EFIS exterior or properly supervise the work of others. In *Grapevine*, in which the plaintiff alleged that the subcontractor had failed to comply with the contract specifications and asserted a claim for negligence, the court explained that "[h]ad the only allegations against [the insured] accused it of knowingly and willfully choosing and using the substandard material that damaged the paving, and doing so to cut corners or gain unearned profit, [the insured] would be a *Maupin* tortfeasor" and there would be no occurrence. 197 F.3d at 730. "As the [underlying plaintiff's] allegations against [the insured] include negligence, however, [the insured] is an *Orkin* tortfeasor," and the complaint alleged an occurrence. *Id.*

 This court follows the *Federated* decision in the Fifth Circuit, as well as similar cases in other courts holding that construction defect claims arising from negligent work allege an "occurrence," leaving the coverage to be determined by construction-specific exclusions in the policy. *See, e.g., Signature Dev. Cos. Inc. v. Royal Ins. Co. of Am.*, 230 F.3d 1215 (10th Cir.2000); *Stonehenge Eng'g Corp. v. Employers Ins. of Wausau*, 201 F.3d 296 (4th Cir.2000); *First Tex. Homes, Inc. v. Mid-Continent Cas. Co.*, 2001 WL 238112 (N.D.Tex.2001); *Federated Mutual Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d at 726.

Great American Insurance relies on *Devoe v. Great Am. Ins.*, 50 S.W.3d 567 (Tex. App.—Austin 2001, no pet.), which involved the same definition of "occurrence."[4] In *Devoe*, the underlying plaintiffs sued the insured builder of their home, alleging breach of contract in the failure to construct the home in a good and workmanlike manner and DTPA violations. The builder's insurer refused to defend the builder in the underlying lawsuit. After winning a default judgment against the builder, the underlying plaintiffs sued the builder's insurer to recover as third party beneficiaries under the builder's policy. The court granted summary judgment in favor of the insurer, finding that the injury did not arise from an "occurrence" and excluded from coverage. In *Devoe*, the court discussed *Stumph v. Dallas Fire Ins. Co.*, 34 S.W.3d 722 (Tex.App.—Austin 2000, no pet.), in which the court found coverage for an occurrence for damages arising from the insured's faulty workmanship. In *Stumph*, the underlying plaintiff sued a contractor who had performed repairs to his parking garage, asserting claims for breach of contract and DTPA violations. In *Stumph*, the underlying plaintiff alleged that:

> subsequent to the completion of the work performed [the plaintiff] was informed by a building tenant that cement

---

4. Calli Homes correctly points out that some of the cases on which Great American Insurance relies are distinguishable because they involve indemnification obligations after jury determinations of liability, not a duty to defend. In *Hartrick*, the court addressed only the duty to indemnify, not the duty to defend, in holding that there was no covered occurrence. In fact, the insurer had provided a defense in the underlying lawsuit and re-served its right to deny coverage. The insurer did not assert that it had no duty to defend. The court's holding in *Hartrick* was based on the jury's finding of liability for breach of implied warranties. An insurer's duty to indemnify is based on the facts establishing liability in the underlying lawsuit, not the pleadings. *Id.* at 821; *see also Data Specialties, Inc. v. Transcontinental Ins. Co.*, 125 F.3d 909, 911 (5th Cir.1997).

from the repaired area had fallen on her vehicle. Moreover, [the plaintiff] has received, and continues to receive, numerous complaints that concrete sediments from the repaired area has dripped, and continues to drip, onto their vehicles resulting in the damaging of the paint on the vehicles.

*Id.* at 729 (quoted in *Devoe,* 50 S.W.3d at 571).

The *Stumph* court held that these allegations "[did] not preclude the possibility that an accident caused the damage to the vehicles." *Id.* The *Devoe* court distinguished *Stumph,* stating that:

The petition in *Stumph* contained facts alleging that the damages resulted from certain events and were not the natural and probable consequences of repairing a garage. [The underlying plaintiff] did not merely allege that the garage repairs were not performed in a good and workmanlike manner, as did the Devoes.

50 S.W.3d at 571–72.

In *Acceptance,* the court stated:

In cases involving faulty home construction, courts have found that injury-producing conduct constituted an accident, and thus an occurrence, where the underlying complaint contained broad allegations of negligence, i.e., that the insured failed to construct the home in "a good and workmanlike manner." *First Texas Homes, Inc. v. Mid–Continent Cas. Co.,* 2001 WL 238112, at *3 (N.D.Tex. Mar.7, 2001) .... In cases where the underlying complaint contained specific allegations that the insured failed to comply with particular plans or specifications, courts have found that the injury-producing conduct did not constitute an accidental occurrence. *See Malone v. Scottsdale Ins. Co.,* 147 F.Supp.2d 623, 627 (S.D.Tex. 2001) ...; *see also Hartford Cas. Co. v. Cruse,* 938 F.2d 601, 604–05 (5th Cir. 1991) ....

2001 WL 1478791 at *3. In *First Texas Homes,* the underlying complaint contained broad allegations that the home the insured constructed was "not of proper quality and was not designed or constructed in a good and workmanlike manner" and that the foundation "was insufficient and resulted in a foundation and home that were not properly designed or built." 2001 WL 238112 at *3. By contrast, in *Malone,* the underlying plaintiff alleged that the contractor "failed to construct the improvements in accordance with the architect's plans and specifications which were ... approved by the City of Conroe." 147 F.Supp.2d at 627.

The *Acceptance* court explained that the *Mid–Century* factors of intent and foreseeability justified the different results in these cases:

In *First Texas,* the insured purported to construct the house according to the plan but, due to faulty workmanship, caused damage to the property. In *Malone,* the insured intentionally deviated from the architect's plan and specifications, thereby causing damage to the property. Thus, the degree of intent and foreseeability in *Malone* was clearly greater than it was in the *First Texas,* warranting a finding that there was no accident and no occurrence.

2001 WL 1478791 at *3. In *Acceptance,* the underlying plaintiffs alleged that the insured failed "to build the house in a good and workmanlike manner and by [its] failure to construct the home in compliance with Local Building Codes, codes referred to in the insurance agreements, and the Construction standards Booklet contained therein." *Id.* at *4. The court stated that the insured's alleged failure to comply with building codes supported a finding that the damage to the home was not accidental "because such damages were the natural and probable consequence of its noncom-

pliance and, thus, should have reasonably been anticipated by [the insured]." *Id.* The court held that there was no "occurrence" and no duty to defend.

■■■■■ The duty to defend arises if at least one of several claims potentially falls within the scope of coverage. *Grapevine,* 197 F.3d at 726. A duty to defend is triggered if at least one of the claims in the underlying lawsuit potentially falls within the scope of coverage, even if others do not. *Grapevine,* 197 F.3d at 725. The underlying plaintiffs' allegation of Calli Homes's negligence alleges an occurrence giving rise to the duty to defend.

This court DENIES Great American's motion for summary judgment based on the absence of an alleged "occurrence."

## IV. The Policy Exclusion

■■■ Great American Insurance asserts that the EFIS endorsement applies to exclude the claims against Calli Homes in the underlying lawsuit. Calli Homes has explained why none of the other potential exclusions applies. A court must accept the insured's "construction of an exclusionary clause as long as that construction is not unreasonable." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991). "The burden is on the insured to show that a claim is potentially within the scope of coverage under the policies; however, if the insurer relies on the policy's exclusions, it bears the burden of showing that one or more of the exclusions applies." *Fed. Mut. Ins. Co. v. Grapevine Excavation, Inc.,* 197 F.3d 720, 723 (5th Cir.1999). "The insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of proving the applicability of any exclusions in the policy. Once the insurer has proven that an exclusion applies, the burden shifts back to the insured to show that the claim falls within an exception to the exclusion." *Guar.*

*Nat'l Ins. Co. v. Vic Mfg. Co.,* 143 F.3d at 193 (internal citations omitted).

Calli Homes asserts that the EFIS exclusion does not apply because it was attached only to the policy for the year 1998 to 1999 and applied only to work performed on or after December 30, 1996. The underlying petition alleges that the Calli Homes performed and completed the work on the home in 1995, before the applicable dates of the exclusion. The petition also alleges that the underlying plaintiffs discovered the damage in 2000, but that the damage is "ongoing," which Calli Homes asserts places it outside the effective dates of the exclusion.

Great American responds that the applicable EFIS endorsement is in the policy effective from July 1, 1999 to July 1, 2000 and contained no language limiting the applicability of the endorsement to work beginning after a certain date. Great American also argues that the date of the occurrence of the property damage is the date of discovery, which is alleged to be in April 2000, within the endorsement.

■■■■ Under Texas law, the insured has the burden of showing that the claimed damages occurred during the policy period. *Employers Cas. Co. v. Block,* 744 S.W.2d 940, 945 (Tex.1988), *overruled on other grounds by State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696 (Tex.1996). "The time of the occurrence is when the complaining party actually was damaged, not the time that the wrongful act was committed." *Am. Home Assur. Co. v. Unitramp,* 146 F.3d 311, 313 (5th Cir.1998)(citing *Cullen/Frost Bank v. Commonwealth Lloyd's Ins. Co.,* 852 S.W.2d 252, 257 (Tex.App.—Dallas 1993, writ denied); *Dorchester Dev. Corp. v. Safeco Ins. Co.,* 737 S.W.2d 380, 383 (Tex.App.—Dallas 1987, no writ)); *see also Snug Harbor, Ltd. v. Zurich Ins.,* 968 F.2d 538, 544 (5th Cir.1992). Under the "manifestation rule,"

"[a] party sustains actual damage when it sustains damage that is readily apparent." *Unitramp*, 146 F.3d at 313. The Texas Supreme Court has not explicitly adopted the "manifestation rule," but other Texas courts have recognized and applied it. *See id.* (citing *State Farm Mut. Auto. Ins. Co. v. Kelly*, 945 S.W.2d 905, 910 (Tex.App.— Austin 1997, writ denied) ("Texas courts have held that property loss occurs when the injury or damage is manifested.")).

Although the date of the occurrence is within the EFIS exclusion, that does not defeat Great American's duty to defend. Under Texas law, "an insurer's duty to defend is triggered if at least one of several claims in the plaintiff's complaint potentially falls within the scope of coverage, even if other claims do not." *Grapevine*, 197 F.3d at 726. The underlying plaintiffs allege that the negligence in construction and supervision extended "far more than mere improper installation of EFIS," to a "myriad of conditions reflective of negligent construction of the Residence" that has caused "collateral damage to structural, mechanical and electrical components of the Residence." (Docket Entry No. 9, Ex. D, p. 7). Because the underlying petition includes allegations that go beyond the installation of the synthetic stucco product, as to which Great American does not assert an exclusion, the duty to defend is triggered.

This court finds that Great American Insurance has failed to show or identify any issue of fact material to determining whether it has a duty to defend Calli Homes in the underlying lawsuit. This court GRANTS Calli Homes's motion for partial summary judgment and DENIES Great American's cross-motion.