## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
June 25, 2018

Lyle W. Cayce
Clerk

No. 17-20263

SPEC'S FAMILY PARTNERS, LIMITED,

      Plaintiff – Appellant Cross-Appellee

v.

THE HANOVER INSURANCE COMPANY,

      Defendant – Appellee Cross-Appellant

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-438

Before KING, JONES, and GRAVES, Circuit Judges.

PER CURIAM:*

      Spec's Family Partners, Limited sued Hanover Insurance Company for refusing to pay its attorney's fees and expenses in defending a claim under the parties' insurance policy. Because the district court erred in granting judgment on the pleadings and dismissing all counts of its complaint against Hanover, we REVERSE and REMAND.

---

     * Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20263

## I.

## A.

Spec's Family Partners, Ltd. ("Spec's") is a specialty retail chain based in Houston that accepts payments from major credit card brands like MasterCard and Visa. To process these credit card payments, in 2001 Spec's entered into a Merchant Agreement with First Data Merchant Services, LLC ("First Data"), a company that processes credit and debit card transactions in exchange for a fee.

Between October 2012 and February 2014, Spec's credit card network was hacked by unknown criminals, which resulted in First Data's having to reimburse issuing banks the costs associated with the fraudulent transactions. First Data demanded payment from Spec's in a letter dated December 16, 2013, claiming there was "conclusive evidence of a breach of the cardholder environment at Spec's," and stating "Spec's was non-compliant with the Payment Card Industry Data Security [Standard] (PCIDSS) requirements." In this first demand letter, First Data listed the prices of the case management fee, fines, and reimbursement costs it used to establish a Reserve Account in the amount of $7,624,846.21 in order to "fund the Mastercard fines and the anticipated Visa fines." First Data also demanded documentation and security compliance from Spec's, including a completed MasterCard Site Data Protection Account Data Information Form and Attestation of Compliance from a Qualified Security Assessor.

On March 25, 2015, First Data sent a second demand letter to Spec's repeating the same allegations regarding the breach of Spec's cardholder environment. The second demand letter notified Spec's of the establishment of a second Reserve Account in the amount of $1,978,019.49, comprising the MasterCard fines related to monitoring and replacement costs and fraud reimbursement. Both demand letters established the Reserve Accounts "in

accordance with Spec's['] indemnification obligation" under the Merchant Agreement and stated "nothing contained herein shall be deemed a waiver of any right we may have under the Merchant Agreement or otherwise and we expressly reserve such right." For purposes of this appeal, the parties and the district court treated the December 2013 and March 2015 demand letters as a single "Claim" under the Policy.

## B.

In 2013, Hanover issued a Private Company Management Liability Insurance Policy (the "Policy") to Spec's for a coverage period of October 28, 2013 to October 28, 2014.

The Policy's provision for Directors, Officers and Corporate Liability Coverage states:

**B. Corporate Entity Liability**

> We will pay "Loss" which the "Insured Entity" is legally obligated to pay because of "Claims" made against the "Insured Entity" during the "Policy Period" and reported to us during the "Policy Period" for any "Wrongful Act" to which this insurance applies.

The Policy defines "Claim" and "Loss" as follows:

**A.** "Claim" means:

> **1.** Any written demand presented for monetary "Damages" or non-monetary relief for a "Wrongful Act"; or
>
> **2.** Any complaint or similar pleading initiating a judicial, civil, administrative, regulatory, alternative dispute or arbitration proceeding, including any appeal result from it, to which an "Insured" is provided notice and which subjects an "Insured" to a binding adjudication of

3

No. 17-20263

liability for monetary or non-monetary relief for a "Wrongful Act."

However, "Claim" shall not include a labor or grievance proceeding pursuant to a collective bargaining agreement.

All "Claims" made on account of a single "Wrongful Act" shall be treated as a single "Claim" made on the date the earliest of the "Claims" was made, regardless of whether that date is before or during the "Policy Period" or, if applicable, during an Extended Reporting Period.

\*\*\*

**H.** "Loss" means the amount the "Insured" is legally obligated to pay for "Damages" and "Defense Expenses" for a covered "Claim" under this Coverage Part. "Loss" does not include:
>    **1.** Any amounts which an "Insured" is obligated to pay as a result of a "Claim" seeking relief or redress in any form other than monetary "Damages;"

The Policy includes the following provision with respect to the defense of "Claims":

>    **VI. DEFENSE OF CLAIMS**
>    We have the right and duty to defend "Claims," even if the allegations in such "Claims" are groundless, false or fraudulent. We have no duty to defend "Claims" or pay related "Defense Expenses" for "Claims" to which this insurance does not apply….

The Policy also includes a number of exclusions to coverage, including the following provision ("Exclusion N"):

>    This insurance does not apply to:
>    **N.** "Loss" on account of any "Claim" made against any "Insured" directly or indirectly based upon, arising out of, or attributable to any actual or alleged liability under a written or oral contract or agreement. However, this exclusion does

4

No. 17-20263

not apply to your liability that would have attached in the absence of such contract or agreement.

When Spec's provided Hanover with timely notice of First Data's demand letters, Hanover initially refused to defend or indemnify the Claim on the basis it fell within Exclusion N of the Policy by virtue of the Merchant Agreement between Spec's and First Data. However, on August 22, 2014, Hanover withdrew its denial of coverage and agreed to provide a defense under a reservation of rights. To that end, Hanover and Spec's entered into a separate Defense Funding Agreement on November 5, 2014, in which Hanover agreed, until such time as it provided written notice to the other party's identified representatives, to the retention of Haynes and Boone, LLP; promised to pay the firm's attorneys' fees at limited hourly rates; and agreed to reimburse Spec's for defense costs previously incurred in defending the Claim, all "subject to [Hanover's] reservation of rights."

To recover the money First Data withheld in the Reserve Accounts, Spec's filed suit against First Data in the United States District Court for the Western District of Tennessee in December 2014 (the "Tennessee Litigation").[1] Although Hanover complied with its obligations under the Defense Funding Agreement for a few months, it eventually refused to pay expenses associated with the Tennessee Litigation, claiming they were not "defense expenses" as they were incurred in pursuit of an affirmative claim against First Data. In response, Spec's brought the claims in this case against Hanover for: (1) breach

---

[1] The Tennessee district court granted Spec's summary judgment motion on July 7, 2017, finding First Data materially breached the Merchant Agreement, as it was not entitled to withhold funds to indemnify itself for the costs associated with the data breaches, and held Spec's is entitled to attorney's fees. *See Spec's Family Partners, Ltd. v. First Data Merch. Servs. Corp.*, No. 2:14-cv-02995-JPM-cgc, 2017 WL 4547168, at *9-10 (W.D. Tenn. July 7, 2017). First Data has filed a notice of appeal.

of the Policy, (2) breach of the Defense Funding Agreement, (3) violation of Chapter 542 of the Texas Insurance Code, and (4) a declaratory judgment that Hanover has an ongoing obligation to pay defense costs.

Hanover moved for judgment on the pleadings under Fed. R. Civ. Pro. 12(c), asserting: (1) Exclusion N of the Policy forecloses "any duty by Hanover to defend or indemnify Spec's," and (2) Spec's is unable to recover "under Chapter 542 of the Texas Insurance Code or Section 38.001 of the Texas Civil Practice and Remedies Code." The district court granted Hanover's Rule 12(c) motion and dismissed all of Spec's claims, finding that while the demand letters were a "Claim" that triggered the duty to defend, Exclusion N precluded coverage because the Claim arose out of the Merchant Agreement between Spec's and First Data. The district court denied as moot Hanover's Request for Judicial Notice and Motion to File Supplemental Authority.[2]

Spec's timely appealed.

## II.

The court reviews a district court's ruling on a Rule 12(c) motion for judgment on the pleadings *de novo*. *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (citation omitted); *see* Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."). A motion for judgment on the pleadings is evaluated using the same standard as a motion to dismiss for failure to state a claim under

---

[2] Hanover filed a conditional cross-appeal regarding the district court's dismissal as moot of Hanover's request for judicial notice of documents upon which the claim against Spec's was made. Because the district court granted Hanover's motion for judgment on the pleadings, Hanover is not an aggrieved party for purposes of appellate standing, its conditional cross-appeal is improper and therefore will not be considered by this court. *See Subway Equip. Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210, 214 (5th Cir. 1993); *see also Cooper Indus., Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 876 F.3d 119, 126 (5th Cir. 2017) (finding a cross-appeal is generally not proper when it is brought to challenge a subsidiary finding or conclusion or when the ultimate judgment is favorable to the party cross-appealing).

Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). "'[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief.'" *Id.* (quoting *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 41, 420 (5th Cir. 2001)). A valid claim for relief is one in which "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). The court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (internal quotation marks and citation omitted).

### III.

Under Texas law, the insured bears the burden of proving a claim against it falls within a policy's affirmative grant of coverage, and the insurer bears the burden of proving an exclusion applies. *Fiess v. State Farm Lloyds*, 392 F.3d 802, 807 (5th Cir. 2004). The primary goal of the court is to give effect to the intention of the parties as expressed in the policy. *Liberty Surplus Ins. Corp. v. Exxon Mobil Corp.*, 483 S.W.3d 96, 100 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). Because ordinary rules of contract interpretation apply to insurance contracts, if a court determines the policy is ambiguous, then it must resolve those ambiguities in favor of the insured. *State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex. 1998). "A policy is unambiguous, as a matter of law, if the court can give it a definite legal meaning." *Id.*

The Policy in this case involves two different duties: the duty to defend and the duty to indemnify. *See Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594 (5th Cir. 2011) (citing *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009)). These duties are distinct and should generally be decided separately. *See id.* (citing *D.R. Horton*, 300 S.W.3d at 743).

No. 17-20263

Under the eight-corners rule, an insurer's duty to defend is determined by "the insurance policy and the third-party plaintiff's pleadings in the underlying litigation, which the court must review 'without regard to the truth or falsity of those allegations.'" *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 309 (5th Cir. 2010) (quoting *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006)). In determining the duty to indemnify, however, the court is not bound by the eight-corners rule but may instead look to the evidence introduced by the parties during the coverage litigation. *See D.R. Horton*, 300 S.W.3d at 741. Although "one duty may exist without the other," *id.* at 743, the same reasons that negate one duty may also negate the other, *see Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997).

Whether Hanover owed Spec's a duty to defend turns on whether the two demand letters contain at least one claim that potentially falls within Hanover's scope of coverage under the Policy.  Again, the duty to defend arises "if at least one of several claims in the plaintiff's complaint potentially falls within the scope of coverage, even if other claims do not." *Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 726 (5th Cir. 1999).  Spec's and Hanover disagree over whether the statements made by First Data in its demand letters allege an occurrence giving rise to the duty to defend or whether they fall entirely under the type of allegations barred by Exclusion N – namely, losses that directly or indirectly are based upon, arise out of, or are attributable to any actual or alleged liability under a written or oral contract or agreement.

Where an underlying petition includes allegations that "go beyond" conduct covered by an exclusion, the duty to defend is still triggered. *Great Am. Ins. Co. v. Calli Homes, Inc.*, 236 F. Supp. 2d 693, 703 (S.D. Tex. 2002).  Even "in case of doubt as to whether or not the allegations of a

8

complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in [the] insured's favor." *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (alteration added) (quoting *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)). In line with these principles, Hanover's duty to defend is triggered if the Claim included the potential for liability on a non-contractual ground, even if the Claim may also have asserted contractual liability that would be barred by Exclusion N.  Additionally, Exclusion N does not apply to "liability that would have attached in the absence of such contract," so the possibility that "a claim could arise out of contractual liability and yet still be covered because a non-contractual theory may also apply" is contemplated by the Policy itself.

In evaluating Hanover's duty to defend, the district rejected Spec's argument that the Claim potentially includes non-contract claims. The court considered that Spec's was asking the court "to look beyond First Data's demand letters, in violation of the eight corners rule, to find a speculative factual scenario or legal theory in which MasterCard or Visa make a claim directly against Spec's."  While acknowledging it had to construe "coverage liberally and policy exclusions narrowly," the district court stated it was "not required to imagine a legal theory for a potential claim from a third party who has not even sent a demand letter or filed a petition."

The district court was not required to imagine a legal theory for a potential claim.  Yet, it was required to frame its analysis in the context of a motion for judgment on the pleadings and the duty to defend. The "central issue" in deciding a motion for judgment on the pleadings is "whether, in the light most favorable to the plaintiff, the complaint states a valid claim for

9

relief." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).

The pleadings, viewed in the light most favorable to Spec's, do not unequivocally show Exclusion N excused Hanover's duty to defend under any set of facts or possible theory. The demand letters themselves include references to Spec's "non-complian[ce]" with third-party security standards and not insignificant demands for non-monetary relief, wholly separate from the Merchant Agreement. As explained by Spec's, the non-monetary relief requested in the form of the completion and submission of forms and an Attestation of Compliance from a Qualified Security Assessor "took several months to complete, demanded countless hours of employee time, and required Spec's to hire an outside firm to assist with the effort." The demand letters included Spec's "obligation" for the assessments, and Spec's requirement to "promptly pay" sums to First Data upon request. The allegations, when construed liberally and in the light most favorable to Spec's, implicate theories of negligence and general contract law that imply Spec's liability for the assessments separate and apart from any obligations "based upon, arising out of, or attributable to any actual or alleged liability under" the Merchant Agreement.

Although both Hanover and the district court emphasized the demand letters' references to "Spec's['] indemnification obligation" found in the Merchant Agreement, this phrase appears in the claim only in connection with First Data's creation of Reserve Accounts. Further, its significance is outweighed by the references to non-contractual theories of liability contained in the letters, which must be construed in favor of Spec's and the duty to defend. Simply put, the district court's assertion that "Spec's fail[ed] to allege any facts that show it would be liable or have any form of privity or obligation to pay damages to First Data for any other reason tha[n] those that arise out

of contractual liability" rewrites the allegations, ignoring statements in the demand letters that do not depend upon the Merchant Agreement, such as Spec's negligence in not complying with the Payment Card Industry Data Security requirements and demands for a type of non-monetary relief not contemplated by the Merchant Agreement.

The district court also erred in entering judgment on the pleadings on Count 2 because Hanover did not move for judgment on the pleadings on Spec's breach of contract claim. The Defense Funding Agreement, the subject of Count 2 of the complaint, is independent of the insurance policy claims in Counts 1, 3 and 4. Count 2 alleged Hanover breached the Defense Funding Agreement by refusing to pay Spec's defense expenses – without providing required written notice – all the while asserting that fees incurred in the Tennessee Litigation do not qualify as defense expenses. In its Motion for Judgment on the Pleadings, Hanover did not mention the Defense Funding Agreement; Hanover argued only that the Policy excused it from having to defend Spec's. Consequently, the district court's judgment on the pleadings dismissing all claims and its effective *sua sponte* dismissal of Count 2 was improper. *See, e.g.*, *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014) (noting "district courts should not dismiss claims *sua sponte* without prior notice and opportunity to respond.") (quoting *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006)).

For the foregoing reasons, we **REVERSE** the district court's judgment and **REMAND** for further proceedings.

11