**GEHAN HOMES, LTD., Appellant,**

v.

**EMPLOYERS MUTUAL CASUALTY COMPANY and Great American Lloyds Insurance Company, Appellees.**

No. 05–03–00574–CV.

Court of Appeals of Texas, Dallas.

Oct. 26, 2004.

Thomas V. Murto, III, and George Edward Crumley, Stradley & Wright, Dallas, for Appellant.

Thomas D. Caudle, Mateer & Shaffer L.L.P., Mark C. Enoch, Glast Phillips & Murray, P.C., Lawrence Fischman, Glast, Phillips & Murray, Dallas, Patrick Smith, Scott Smith, Smith, Smith & Smith, L.L.P., Mesquite, for Appellee.

Before Justices WHITTINGTON, LANG, and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

Employers Mutual Casualty Company and Great American Lloyds Insurance

Company (sometimes collectively referred to as "the insurers") obtained a summary judgment from the trial court holding that they had no duty to defend or indemnify Gehan Homes, LTD. (Gehan) in an underlying lawsuit. We reverse and remand for further proceedings.

## BACKGROUND

Gehan is a home builder that purchased commercial general liability (CGL) insurance policies from insurers, including Employers Mutual and Great American. The Employers Mutual policy provided coverage from June 30, 1997 through June 30, 1998, and the Great American policy provided coverage from June 30, 1998 through June 30, 1999.

On May 7, 2001, Gehan's customers, the Larsons, filed suit against Gehan claiming that there were foundation problems with the home they purchased from Gehan.[1] The Larsons claimed that the home was designed and constructed by Gehan independently and/or through engineers and independent contractors, and that the home was not as represented, not of proper quality, and was not designed or constructed in a good and workmanlike manner. They also claimed that Gehan was negligent in relying upon the developers' general soil analysis and in failing to obtain an accurate soil analysis upon which to base a foundation design. The Larsons sought damages arising from negligence and malice, breach of contract and warranty, DTPA violations, and fraud. In the alternative, the Larsons asked the court to rescind their purchase of the house. After

the Larsons filed suit, the insurers filed a declaratory judgment action against Gehan and asked the court to find that they had no duty to defend or indemnify Gehan against the Larsons' underlying claims.[2] Employers Mutual filed both traditional and no-evidence summary judgment motions, and Great American filed a traditional summary judgment motion. The court granted both of the insurers' traditional summary judgment motions, holding that the insurers did not have any duty to defend or indemnify Gehan Homes in the Larsons' case. The court denied Employers Mutual's no-evidence motion.

Gehan contends that the court erred by granting summary judgment because the insurers failed to establish as a matter of law that they did not have a duty to defend and that the court's ruling on the duty to indemnify was premature. We agree.

## STANDARD OF REVIEW

We review a grant of summary judgment *de novo*. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied). To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). Any doubts about the existence of a genuine issue of material fact are resolved against the movant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). All evidence and any reason-

1. The Larsons filed a lawsuit originally against Gehan and by amended pleadings added Systems Engineering, Inc. and Richard Martter, P.E. The claims against Gehan were ordered to arbitration and the remainder of the claims were abated pending the outcome of the arbitration.

2. Employers Mutual filed the lawsuit seeking a declaratory judgment that it did not have a duty to defend or indemnify Gehan in the Larson lawsuit and sought reimbursement or indemnification from Great American and another insurance company. Great American filed a general denial and a cross claim that it had no duty to defend or indemnify Gehan.

able inferences must be viewed in the light most favorable to the nonmovant. *Id.* All evidence favorable to the nonmovant will be taken as true. *Southwestern Elec. Power Co.,* 73 S.W.3d at 215. Evidence favorable to the movant will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965).

## DUTY TO DEFEND

The insurer's duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy. *Hallman v. Allstate Ins. Co.,* 114 S.W.3d 656, 659 (Tex.App.-Dallas, 2003, pet.granted). The duty to defend is determined by the allegations in the underlying pleadings and the language of the insurance policy. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997). This standard is referred to as the "eight corners" rule. *Id.* When we apply the "eight corners" rule, we give the allegations in the petition a liberal interpretation in favor of the insured. *Id.* The allegations should be considered in light of the policy provisions without reference to their truth or falsity and without reference to what the parties know or believe to be the true facts. *See Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex.1973). The facts alleged in the petition against the insured are presumed to be true when gauging the insurer's duty to defend. *Heyden Newport Chem. Corp. v. Southern General Ins. Co.,* 387 S.W.2d 22, 24 (Tex. 1965). The court may not read facts into the pleadings, look outside the pleadings, or "imagine factual scenarios which might trigger coverage." *Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d at 142. A liability policy obligates the insurer to defend the insured against any claim that could *poten-*

*tially* be covered, regardless of the claim's merits. *Heyden Newport Chem.Corp.,* 387 S.W.2d at 26. If the pleadings do not state facts sufficient to bring the case clearly within or without the coverage, the general rule is that the insurer is obligated to defend if *potentially* there is a case under the pleadings within the coverage of the policy. *See Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d at 141. A duty to defend any of the claims against an insured requires the insurer to defend the entire suit. *Stumph v. Dallas Fire Ins. Co.,* 34 S.W.3d 722, 728 (Tex.App.-Austin 2000, no pet.); *Pro–Tech Coatings, Inc. v. Union Standard Ins. Co.,* 897 S.W.2d 885, 892 (Tex.App.-Dallas 1995, no writ).

## THE CGL POLICIES

In its first issue, Gehan contends that the trial court erred in granting summary judgment because the insurers failed to prove as a matter of law that the Larsons' pleadings did not allege a claim that could potentially be covered under the CGL policies. We look to the policy to determine whether there was a duty to defend. The insurance policies contain the following language:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages.

The policies further provide that "[the] insurance applies to 'bodily injury' and 'property damage' only if: (1) the 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" Consequently, to trigger the duty to defend, the Larsons' underlying claim must be for "property damage" or "bodily injury" caused by an "occurrence."

## A. OCCURRENCE

Gehan and the insurers disagree on the meaning of "occurrence." In the definitions section of both of the policies, the term "occurrence" is defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policies do not define the term "accident," but the Texas Supreme Court has held that an injury is accidental if

"[it is] not the natural and probable consequence of the action or occurrence which produced the injury; or in other words, if the injury could not reasonably be anticipated by [the] insured, or would not ordinarily follow from the action or occurrence which caused the injury."

*Mid–Century Ins. Co. v. Lindsey,* 997 S.W.2d 153, 155 (Tex.1999) (quoting *Republic Nat'l Life Ins. Co. v. Heyward,* 536 S.W.2d 549, 557 (Tex.1976)). "[B]oth the actor's intent and the reasonably foreseeable effect of his conduct bear on the determination of whether an occurrence is accidental." *Lindsey,* 997 S.W.2d at 155. Additionally, it is "the insured's standpoint [that] controls in determining whether there has been an 'occurrence' that triggers the duty to defend." *King v. Dallas Fire Ins. Co.,* 85 S.W.3d 185, 188 (Tex. 2002).

Two lines of cases defining the term occurrence have evolved. The first line of cases is derived from the Texas Supreme Court's decision in *Maupin,* 500 S.W.2d at 633. The *Maupin* line of cases "pertains to coverage of claims against an insured for damage caused by its alleged *inten-*

*tional torts." Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.,* 197 F.3d 720, 723 (5th Cir.1999) (emphasis in original). In *Maupin,* the plaintiff sued for trespass, not negligence, claiming that the insured "intentionally, wrongfully and willfully" entered upon the Meyers' property and inflicted damage by taking dirt, sand, gravel and rock from property when it did not have permission to do so. *Maupin,* 500 S.W.2d at 636. The defendant admitted it took the materials from the property, but claimed that it believed it had permission to do so from the owner.[3] The court held that there was no occurrence because the conduct alleged was intentional. *Id.*

The second line of cases is derived from the Texas Supreme Court's decision in *Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.,* 416 S.W.2d 396 (Tex.1967). In *Orkin,* the underlying claim was that the insured was negligent when it applied a pesticide to the rice mill's facilities and to the rice itself, thus damaging the rice. The insured paid the judgment against it for negligence and sought reimbursement from the insurer. The policy provided that the insurer would "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident." *Id.* at 397. The *Orkin* court construed the term "accident" to include "negligent acts of the insured causing damage which is undesigned and unexpected." *Id.* at 400. The court held that "the damage for which Orkin was held liable was caused by an 'accident' within the meaning of the

---

3. The court held that, "[a]n intentional tort is neither an 'accident' nor 'occurrence' within the terms of the policy." *Maupin,* 500 S.W.2d at 636. The *Maupin* holding was based on the type of claim made, an intentional tort, and the fact that the definition of the term 'occurrence' specifically included:

"(a) an accident, or (b) in the absence of an accident, a condition for which the insured is responsible which during the policy period causes physical injury to or destruction of property which was not intended." *Id.* at 634 n. 1.

policy." *Id.* at 401. "Following *Orkin,* both state and federal courts in Texas have interpreted the terms 'accident' and 'occurrence' to include damage that is the 'unexpected, unforeseen[,] or undesigned happening or consequence' of an insured's negligent behavior." *Great Am. Ins. Co. v. Calli Homes, Inc.,* 236 F.Supp.2d 693, 699 (S.D.Tex.2002).

The *Orkin* analysis has been applied to claims for damages because of an insured's defective performance or faulty workmanship. In *Grapevine Excavation,* the underlying plaintiff alleged that the subcontractor failed to comply with the contract specifications and asserted a claim for negligence. 197 F.3d at 726. The court explained that "[h]ad the only allegations against [the insured] accused it of knowingly and willfully choosing and using the substandard material that damaged the paving, and doing so to cut corners or gain unearned profit, [the insured] would be a *Maupin* tortfeasor" and there would be no occurrence. *Id.* at 730. But the court went on to explain that because "[the underlying plaintiff's] allegations against [the insured] include negligence, [the insured] is an *Orkin* tortfeasor," and the complaint alleged an occurrence. *Id.*

Gehan and the insurers have all cited cases that they contend support their position. We note that there are several cases that hold that there was an "occurrence" where the allegation was of defective workmanship. *See Federated Mutual Ins. Co. v. Grapevine Excavation, Inc.* 197 F.3d 720 (5th Cir.1999); *Hartford Casualty Co. v. Cruse,* 938 F.2d 601 (5th Cir. 1991); *CU Lloyd's of Texas v. Main Street Homes,* 79 S.W.3d 687 (Tex.App.-Austin 2002, no pet.); *Luxury Living, Inc. v. Mid–Continent Casualty, Co.,* No. H–02–3166, 2003 WL 22116202 (S.D.Tex. Sep 10, 2003); *Great Am. Ins. Co. v. Calli Homes, Inc.,* 236 F.Supp.2d 693 (S.D.Tex.2002);

*Mt. Hawley Ins. Co., v. Steve Roberts Custom Builders, Inc.,* 215 F.Supp.2d 783 (E.D.Tex.2002); *First Texas Homes, Inc. v. Mid–Continent Casualty Co.,* No. 3–00–CV–1048–BD, 2001 WL 238112 (N.D.Tex. Mar.7, 2001); *E & R Rubalcava Const., Inc. v. Burlington Ins. Co.,* 147 F.Supp.2d 523 (N.D.Tex.2000), and *Ins. Co. of N. Am. v. McCarthy Brothers Co.,* 123 F.Supp.2d 373 (S.D.Tex.2000). We also note that there are cases to the contrary. *See Mid Arc, Inc. v. Mid–Continent Casualty Co.,* No. A–03–CA–242–SS, 2004 WL 1125588 (W.D.Tex. Feb.25, 2004); *Tealwood Const., Inc. v. Scottsdale Ins. Co.,* No.3:02–CV–2159–L, 2003 WL 22790856 (N.D.Tex. Nov.19, 2003) (court aware of and agreed with line of cases holding construction defect claims arising from negligent work alleged "occurrence"; but petition included bare-bone allegations of negligence, and constituted breach of contract and breach of express and implied warranty claims recast as negligence claims); *Jim Johnson Homes, Inc. v. Mid–Continent Casualty Co.,* 244 F.Supp.2d 706 (N.D.Tex.2003).

The Texas Supreme Court analyzed the meaning of the word "occurrence" in *King,* 85 S.W.3d at 187–92. The court noted that in 1966 the CGL policies were modified and the language defining "occurrence" was changed. *Id.* at 192. That term was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful condition, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.* In 1986, the language was changed to the current definition, deleting the language, "which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The *King* court reviewed the history of the definition and noted that to read into "occurrence" a limitation to unintentional acts

"renders the exclusion for intended injury surplusage." *Id.* at 192–93.

This court has also construed the terms "occurrence" and "accident" in *Hallman*, 114 S.W.3d at 660–61. In *Hallman*, neighboring landowners sued the insured, claiming that she leased her property to mining operators who performed blasting operations that harmed the neighbors and their property. *Id.* at 659. The intentional act was the lease for mining operations, "[b]ut the effect of the lease, that is, the alleged damage to neighboring property from blasting and dust, was not the intended result had the lease been performed non-negligently." *Id.* at 661. In explaining the meaning of "occurrence" this court stated that

> [t]here is not an accident when the action is intentionally taken and performed in such a manner that it is an intentional tort, regardless of whether the effect was unintended or unexpected. (citations omitted). However, there is an accident when the *action is intentionally taken but is performed negligently* and the effect is not what would have been intended or expected had the deliberate action been performed non-negligently.

*Id.* at 660–661. This court held that the trial court erred in granting summary judgment for the insurance company because the insured claimed that the action deliberately taken, the lease, was performed negligently and that the result was unexpected from the insured's standpoint. *Id.* at 662.

In a recent case involving similar claims, *Main Street Homes*, the insurance companies sought a declaratory judgment that they did not have an obligation to defend a residential home contractor in a claim filed by a homeowner alleging that the house purchased from the insured had foundation defects. *Main Street Homes*, 79 S.W.3d at 690. The court interpreted "occurrence"

and held that "if intentionally performed acts are not intended to cause harm but do so because of negligent *performance*, a duty to defend arises." *Id.* at 693 (emphasis in original).

The insurers refer us to *Jim Johnson Homes*, where the court held that the decision in *Main Street Homes* was an anomaly and was incorrectly decided. *Jim Johnson Homes*, 244 F.Supp.2d at 719. In *Jim Johnson Homes*, the underlying claims were breach of contract, violation of the Texas Deceptive Trade Practice Act, and fraud. In the alternative, the insured alleged negligence in building the home that was the subject of the lawsuit. The court held that

> [a]lternative, conclusory allegations of negligence such as the [insureds] made in their demand cannot serve to overcome the specific facts, as set forth in the demand, when, as here, those facts quite clearly demonstrate that the real complaint is that plaintiff did not live up to his contractual obligations to build their house properly. Artful pleading suggesting that plaintiff's acts were negligent or reckless 'cannot overcome the basic facts underlying [the] claims.' (citation omitted). The allegation that plaintiff was negligent is simply an embellishment on, and a re-characterization of, the basic breach of contract and fraud claims the [insureds] assert in their demand. The duty to exercise care that the [insureds] alternatively claim defendant violated arose from plaintiff's express and implied contractual obligations. The focus here, as it should be in all cases of this kind, is not on the characterization given by the homeowners of their claim against their builder, but is on whether the evidence would support findings invoking the insurance coverage.

*Id.* at 716–717. The court concluded that *Main Street Homes* was not representative of Texas law. *Id.* at 719.

Gehan argues that Texas law requires a determination that the underlying claims alleged an occurrence because the Larsons pleaded that Gehan was negligent and that the engineers and subcontractors that Gehan hired were negligent. Great American contends that "it is not the legal label they placed on their claim that determines coverage, it is the facts that control," citing *American Alliance Ins. Co. v. Frito–Lay, Inc.* 788 S.W.2d 152, 154 (Tex.App.-Dallas 1990, writ dism'd).[4] The insurers contend that there is confusion in the law and that this court should establish a standard that analyzes claims based on the underlying relationships to determine whether the claim is really based on a contract or a tort. They assert that the Larsons' claims are based on the underlying contract and Gehan's failure to construct the house in a good and workmanlike manner, which they argue is a breach of contract claim. The insurers reason that because there is an underlying contract between Gehan and the Larsons, the construction was a volun-

tary and deliberate act, and injury was to the subject of the contract, all conduct and claims must be viewed as related to that contract. The insurers' position is supported by *Jim Johnson Homes* and the other cited cases where the courts held that there was no occurrence even though the underlying pleadings alleged negligence claims.[5]

■ The insurers ask this court to ignore the negligence allegations in the underlying statement of claims. However, Texas courts will not look beyond the pleadings and determine facts when the issue is duty to defend, as opposed to duty to indemnify.[6] There is a vast difference between a court analyzing pleadings to determine whether there is a claimed "occurrence" on the face of the pleadings and a court conducting an evaluation of the merits of the underlying claim. Texas cases do not direct us to ignore pleadings or to elevate one part of the pleadings over the other. In this case, the allegations of negligence are more than simply barebones allegations. However, as the insurers point out, they are also tied to an

**4.** *Frito–Lay* actually holds that the duty to *indemnify* is based, not upon the pleadings, but upon the actual facts which underlie and result in liability. *Frito–Lay, Inc.* 788 S.W.2d at 154.

**5.** However, we note that many of the Texas cases cited for the principal that we should review the underlying facts and not just the legal theories pleaded tend to involve claims of intentional conduct, such as assault, that the claimant attempted to recast as a negligence claim.

**6.** By way of contrast, a duty to indemnify is determined by the actual facts as proven. *Chiriboga v. State Farm Mut. Auto. Ins. Co.,* 96 S.W.3d 673, 680 (Tex.App.-Austin 2003, no pet.). Some courts create confusion by adopting decisions that apply the standard for determining whether there is a duty to indemnify to a determination of whether there is a

duty to defend. For example, in *Hartrick v. Great American Lloyds,* 62 S.W.3d 270, 276–77 (Tex.App.-Houston 2001, no pet.), a case cited in some duty to defend cases, the homeowner asserted several claims against the homebuilder, including negligence and breach of warranty claims. The insurance company provided a defense with a reservation of rights. The jury found no negligence but did find in favor of the homeowners on the breach of warranty claim. The *Hartrick* court evaluated the duty to indemnify and held that there was no coverage because the jury had only found against the insured on a breach of warranty, i.e. contract claim, and the contract claim did not constitute an "occurrence." *Id.* The standard applied in *Hartrick* does not apply here because that court was evaluating whether a breach of warranty claim could constitute an "occurrence" and there was no remaining negligence claim in the *Hartrick* case.

underlying contractual relationship. If we were to hold that there is no duty to defend, we would be doing precisely what Texas courts have long held we cannot do—evaluate the merits of the claim and ignore the facts alleged.[7] Instead, we must liberally interpret the pleadings to determine whether an occurrence is potentially claimed.

The insurers also argue that since the claim is damage to the house, the subject of the contract, there is no occurrence. We recognize that some courts have based their decision on that basis.[8] However, several courts have held that negligence that results in damage to the subject of the contract, the house, constitutes an "occurrence,"[9] because the relevant inquiry is not whether the insured damaged his own work, but whether the resulting damage was unexpected and unintended. We agree with this latter analysis. Since the decision of whether there is a duty to defend is based exclusively on the pleadings and the language of the policy, we cannot read language into the policy that simply is not there. Such an interpretation would render as surplusage the language in the exclusions that apply to property damage. *See King*, 85 S.W.3d at 192–93.

▪ Additionally, the insurers contend that because the Larsons alleged malice, an intentional tort, in connection with the negligence claim, there is no occurrence. Although some allegations in the Larsons'

petition may be construed as alleging an intentional tort, other claims allege negligence against Gehan and its subcontractors. Among other things, the Larsons' petition alleges that (1) Gehan was negligent in relying upon a subcontractor's general soil analysis when designing the home's foundation, and (2) the engineers and subcontractors hired by Gehan were negligent in designing or constructing a post tension slab that was not sturdy enough for the area's expansive clay soils. These allegations do not claim that Gehan intentionally performed substandard work or intentionally obtained a faulty soil analysis from its subcontractor. Alternative allegations of intentional or malicious conduct will not defeat the duty to defend if combined with allegations that would trigger coverage. *See Harken Exploration Co. v. Sphere Drake Ins.*, 261 F.3d 466, 474 (5th Cir.2001); *Stumph*, 34 S.W.3d at 729. In this case, the intentional act of performing the contract was allegedly performed negligently. The purported damage was an unexpected and undesigned consequence of Gehan's alleged negligence. *See Calli Homes, Inc.*, 236 F.Supp.2d at 699. We conclude, therefore, that the insurers did not establish as a matter of law that the Larsons' petition does not allege an "occurrence" under the terms of the policy.

## B. PROPERTY DAMAGE

▪ The policies define "property damage" as

---

7. For a court to decide that the negligence claims have no merit because they are simply a recast of the contract allegations, it would have to conduct a preemptive analysis of the merits of the pleadings pending in a separate case.

8. *See Malone v. Scottsdale Ins. Co.*, 147 F.Supp.2d 623, 628–29 (S.D.Tex.2001); *Jim Johnson Homes*, 244 F.Supp.2d at 714, 717; *Bateson Constr. Co. v. Lumbermens Mut. Cas.*

Co., 784 S.W.2d 692, 694–95 (Tex.App.-Houston [14th Dist.] 1989, writ denied) (relying on earlier version of CGL policy);

9. *See Main Street Homes*, 79 S.W.3d at 690–95; *Cruse*, 938 F.2d at 604–05; *Luxury Living*, 2003 WL 22116202, at *12–16; *First Texas Homes*, 2001 WL 238112, at *2–3; *E & R Rubalcava*, 147 F.Supp.2d at 526–27; *Calli*, 236 F.Supp.2d at 699–702.

[p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

Just as Great American argues against an "occurrence" in this case, it also argues that the underlying claim is really a contract claim, and that we should disregard the tort claim and hold that there is no "property damage" under the policy. However, as with our analysis of the term "occurrence," we will not disregard claims and determine which claims are viable.[10] Instead, we look at the claims alleged. The Larsons seek damages for the reasonable expense of temporary housing. This is a "loss of use" claim under the policies' definition of property damage. Additionally, the Larsons claim that they suffered physical injury to tangible property. Great American contends that the policy does not create a duty to defend when the physical injury is to the property that is the subject of the underlying contract. Again, the language of the policy does not support the insurers' position. As we noted, this interpretation would render the exclusions surplusage. As a result, we conclude that the insurers did not establish as a matter of law that the underlying petition does not make a claim for property damage under the terms of the policy.

### C. Bodily Injury

■ The insurers also argue that the Larsons did not allege bodily injury in their underlying petition. We note that

the policies define bodily injury as "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time." The Texas Supreme Court has held that bodily injuries under a commercial general liability insurance policy do not include injuries that are solely mental in nature. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex.1997). The insurers argue that any physical pain associated with the Larsons' injuries stems solely from their mental suffering. As previously discussed, "[a]n insurer's duty to defend is determined by the allegations in the pleadings and the language of the insurance policy." *Merchs. Fast Motor Lines*, 939 S.W.2d at 141. In their petition, the Larsons alleged that they "suffered great physical and mental pain." Although these allegations are listed under the general heading of "Mental Anguish," we must construe the allegations liberally in favor of Gehan. *See id.* at 141. In doing so, we conclude that the insurers did not establish as a matter of law that the Larsons did not allege bodily injury under the policies.

### D. Conclusion

We hold that the Larsons' claims allege "property damage" and "bodily injury" caused by an "occurrence," thus triggering coverage under the policy and giving rise to a duty to defend absent an applicable policy exclusion.

### POLICY EXCLUSIONS

■ The insurers contend that even if the Larsons alleged an occurrence within the terms of their CGL policies, they were entitled to summary judgment because

---

10. Employers Mutual also argues that Gehan waived the right to raise this issue on appeal because it did not respond to the issue with argument or evidence. However, Gehan responds by claiming that since it is contending that the summary judgment motion and evidence were insufficient as a matter of law, no response was necessary to preserve the issue for appeal. We conclude that the issue was not waived.

several exclusions precluded coverage. We note that property damage is the sole subject of all but two of the exclusions; thus, the Larsons' alleged bodily injury claims are not subject to those exclusions and still fall within the insurers' policy coverage. As we stated previously, an insurer has a duty to defend the entire suit if there is any claim in the underlying petition that is potentially covered by the policy. *St. Paul Ins. Co. v. Tex. Dept. of Transp.*, 999 S.W.2d 881, 884 (Tex.App.-Austin 1999, pet denied). Consequently, these exclusions do not defeat the insurers' duty to defend.

■ Neither insurer presented argument or authorities regarding the two remaining exclusions in their motions for summary judgment to show that the policy exclusions were applicable to the Larsons' claims, thus precluding their duty to defend. Gehan argues on appeal that we should not consider the two exclusions because of the insurers' lack of argument and authorities, both before the trial court and this court.

■ In regards to the insurers' motion for summary judgment, rule 166a(c) states that "the motion for summary judgment shall state the specific grounds therefor." TEX.R. CIV. P. 166a(c). However, a movant is not required to specifically describe how evidence in support of the motion justifies a summary judgment; merely identifying a theory of liability or defense will suffice. *See, e.g., Garcia v. S. Tex. Security & Alarm Co.*, 911 S.W.2d 483, 485 (Tex.App.-Corpus Christi 1995, no writ); *Conquistador Petroleum, Inc. v. Chatham*, 899 S.W.2d 439, 441–42 (Tex. App.-Eastland 1995, writ denied). And in regard to the insurers' failure to address these two exclusions in their appellate brief, when a motion for summary judgment is based on several different grounds and the order granting the motion is silent as to the reason for granting the motion, the appellant must show that each independent ground alleged in the motion is insufficient to support summary judgment, and the summary judgment must be affirmed if any of the theories are meritorious. *FM Properties Operating, Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex.2000). Consequently, we must address the two exclusions.

Exclusion 2(a) excludes coverage for "bodily injury" or "property damage" that is expected or intended from the standpoint of the insured. Exclusion 2(b) excludes coverage for "bodily injury" or "property damage" that the insured is obligated to pay under contract or agreement liability. Construing the Larsons' allegations liberally in favor of Gehan, we cannot conclude that the summary judgment evidence establishes that the Larsons' injuries were expected or intended from the standpoint of the insured. Additionally, the summary judgment evidence does not establish as a matter of law that the claims are for damage the insured is obligated to pay under contract or agreement liability simply because there was a contract between Gehan and the Larsons. As a result, we conclude that the insurers did not establish as a matter of law that the Larsons' claims are precluded by policy exclusions.

## DURING THE POLICY PERIOD

■ To be covered, the property damage must occur during the policy period.[11] As previously discussed, the duty to defend is determined under the "eight corners" rule, and a court cannot look outside the pleadings to determine when the inju-

---

11. The "insurance applies to 'bodily injury' and 'property damage' only if: ... (2) the 'bodily injury' or 'property damages' occurs during the policy period."

ry manifested itself. *See Merchs. Fast Motor Lines,* 939 S.W.2d at 142. Construing the pleadings liberally in favor of Gehan, we cannot conclude that appellees established as a matter of law that no claims were alleged during the policy period. The Larsons filed suit against Gehan in May of 2001 and claimed that they suffered "past" bodily injuries and property damages without identifying when in the past this occurred. In construing the allegations of the underlying suit, the pleadings are strictly construed against the insurer, and any doubt is resolved in favor of coverage. *Id.* at 141; *Pro–Tech,* 897 S.W.2d at 890. We conclude that the insurers did not establish as a matter of law that there was no allegation of a potential occurrence within the policy coverage period.

## DUTY TO INDEMNIFY

Finally, Gehan contends that because there was a duty to defend, the court also erred in determining that there was no duty to indemnify. We agree and conclude that when the court determines that there is a duty to defend, a ruling on the duty to indemnify is premature. *See Nationwide Prop. & Cas. Ins. Co. v. McFarland,* 887 S.W.2d 487, 491 (Tex. App.-Dallas 1994, writ denied).

## CONCLUSION

We hold that the trial court erred in granting summary judgment on the insurers' duty to defend because the insurers failed to prove as a matter of law that the Larsons' pleadings did not allege a claim that could potentially be covered under the CGL policies. We also conclude that the trial court erred in granting summary judgment on the insurers' duty to indemnify as being premature. We reverse the trial court's summary judgment and re-

mand this case for further proceedings consistent with this opinion.