**AFFIRM; and Opinion Filed December 31, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-01619-CV

**BECKY DREW AND ROBERT KEVIN DREW, Appellants**
**V.**
**TEXAS FARM BUREAU MUTUAL INSURANCE COMPANY, Appellee**

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-12720**

## MEMORANDUM OPINION

Before Justices O'Neill, Fillmore, and Chief Justice Thomas, Retired[1]
Opinion by Justice O'Neill

Appellants Becky and Robert Kevin Drew filed suit against their liability insurance carrier, appellee Texas Farm Bureau Mutual Insurance Company ("Farm Bureau"), alleging that it breached the policy by refusing to defend and indemnify the Drews in underlying litigation. The parties filed motions for summary judgment on the issue of Farm Bureau's duty to defend or indemnify the Drews under the policy. The trial court granted Farm Bureau's motion and rendered judgment for Farm Bureau. Because we agree the allegations in the underlying case did not constitute an "occurrence" under the policy, we affirm the trial court's judgment. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

---

[1] The Honorable Linda Thomas, Chief Justice of the Court of Appeals for the Fifth District of Texas—Dallas, Retired, sitting by assignment.

BACKGROUND

On October 5, 2010, Charles Sneed sued Becky Drew in Dallas County district court. Sneed alleged that he owned a home in Coppell, Texas, subject to a deed of trust held by Wells Fargo Bank, N.A. He alleged that on August 3, 2010, Drew purchased the home at a trustee's sale conducted by Wells Fargo. Sneed alleged that he continued to live in the home; that Drew never made any demand on him to vacate the home or any attempt to remove him by a judicial proceeding; and that therefore he became a tenant at sufferance. Sneed alleged that in September 2010, while he was out, Drew changed the locks on the home. He alleged that she removed his personal property from the home and sold or disposed of it. Sneed further alleged that when his wife attempted to stop the garage sale of his possessions, she was threatened with arrest.

Farm Bureau issued a homeowner's insurance policy to the Drews effective July 5, 2010, to July 5, 2011. The Drews tendered Sneed's petition to Farm Bureau in October, 2010. In a letter dated October 19, 2010, Farm Bureau declined to defend the suit on Becky Drew's behalf. In June, 2012, the Drews tendered to Farm Bureau Sneed's Fourth Amended Original Petition in the underlying suit, as well as a petition in intervention filed by Ann Sneed, the wife of Charles Sneed. In a letter dated July 31, 2012, Farm Bureau again refused to defend the suit.

The Drews brought this suit against Farm Bureau on October 26, 2012. The trial court granted Farm Bureau's motion for summary judgment. This appeal followed.

## ISSUES

In three issues, the Drews contend the trial court erred by granting summary judgment for Farm Bureau. First, they contend the petition in the underlying case, construed under the proper standard, alleged an "occurrence" and established potential coverage as a matter of law. Second, they contend that a policy exclusion relied on by Farm Bureau is not applicable as a matter of law. Third, they contend that Farm Bureau's no-evidence motion for summary judgment was

deficient. They argue that in any event, they produced competent summary judgment on each element of their claim for breach of contract in their summary judgment response.

## STANDARD OF REVIEW

We review the trial court's summary judgment de novo. *Gehan Homes, Ltd. v. Employers Mut. Cas. Co.*, 146 S.W.3d 833, 837 (Tex. App.—Dallas 2004, pet. denied). To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Gehan Homes*, 146 S.W.3d at 837. Any doubts about the existence of a genuine issue of material fact are resolved against the movant, and all evidence and any reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id.*

## DISCUSSION

Farm Bureau's duty to defend the suit against the Drews is determined by the eight corners rule, by considering only the terms of the Drews' insurance policy and the allegations in the Sneeds' petition. *See Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009). If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 829 (Tex. 1997).

### A. The Eight Corners

#### 1. The policy

The Drews' insurance policy defines "occurrence" as "an accident, including exposure to conditions, which results in bodily injury or property damage during the policy period."

–3–

## 2.    The Sneeds' petitions

In the first petition ("Original Petition") submitted by the Drews to Farm Bureau, Charles Sneed brought suit against Becky Drew alleging conversion, violation of the Texas Theft Liability Act, and unjust enrichment.  Sneed alleged:

> On information and belief, in September 2010 while Mr. Sneed was absent from the Home and without the permission of Mr. Sneed, Defendant or her agents changed the locks on the Home, removed Mr. Sneed's personal property and the personal property of his daughter out of the Home, and conducted a garage sale of those possessions or otherwise disposed of them. When Mr. Sneed's wife attempted to stop the garage sale, she was threatened with arrest. On information and belief, Defendant used the proceeds of the garage sale to make improvements on the Home and also invested those proceeds in other assets or deposited those proceeds into other assets.

The Drews submitted a second petition to Farm Bureau, Charles Sneed's Fourth Amended Petition (the "Fourth Petition").  In the Fourth Petition, Robert Drew is also a defendant, and the petition recites that he has already appeared in the suit.  Paragraph 4 of the Fourth Petition alleges:

> On August 18, 2010, while Mr. Sneed was absent from the Home and without the permission of or notice to either of the Sneeds, the Defendants' agent on the Defendants' instructions changed the locks on the Home. The Defendants did not provide any notice to the Sneeds either by mail or by posting at the Home informing them that they had taken possession of the Home and its contents and how they could obtain access to the Home to retrieve their possessions. On August 27 and 28, 2010, the Defendants conducted a public sale at the Home and in that sale sold some of the Sneeds' property. They thereafter removed the remainder of the Sneeds' property from the Home. Some of the Sneeds' property was offered for sale on the internet after the conclusion of the sale at the Home. Early in May of 2011, the Defendants informed Mr. Sneed through his counsel that they were in possession of some of the Sneeds' property that had been in the Home, but despite repeated demands that they return it to the Sneeds, the Defendants have failed and refused to do so and continue to retain it.

The Fourth Petition alleged causes of action for conversion and unjust enrichment, and sought exemplary damages.

Next, Ann Sneed intervened in the suit on her own behalf and on behalf of her minor child. Her petition in intervention was also submitted to Farm Bureau by the Drews. Ann Sneed alleged that she and her daughter had a justiciable interest in the suit because they were owners of property that was the subject of the suit. She alleged causes of action for conversion and unjust enrichment, and sought exemplary damages. She adopted the allegations of Charles Sneed's petition, and also alleged:

> On information and belief, in September 2010 while Ann Sneed was absent from the Home and without the permission of Ann Sneed, the Defendant or her agents changed the locks on the Home, removed Ann Sneed's personal property and personal property of her daughter out of the Home, and sold or otherwise disposed of the personal property of Ann Sneed and her daughter.

## B. Duty to Defend

Farm Bureau's duty to defend is determined by the allegations in the underlying petition when considered in the light of the policy provisions without reference to the truth or falsity of such allegations. *Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973). As explained in *Maupin*, the duty to defend does not depend on what the facts are, or what might be determined finally by the trier of fact; it depends only on what the facts are alleged to be. *Id.* at 636. A liability policy obligates the insurer to defend the insured against any claim that could potentially be covered, regardless of the claim's merits. *Gehan Homes, Ltd.*, 146 S.W.3d at 838. If the pleadings do not allege facts within the scope of the policy's coverage, an insurer does not have a duty to defend. *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 643 (Tex. 2005). In the event of an ambiguity, however, we construe the pleadings liberally and resolve any doubt in favor of coverage. *Id.*

Farm Bureau contends that the conduct alleged in the Sneeds' petition is not an "accident," and therefore not an "occurrence" under the Drews' policy. The Drews respond that accidental conduct includes volitional conduct done without knowledge of the pertinent facts. They argue that although they intentionally sold the Sneeds' property, they did so under the mistaken but reasonable assumption that the property had been abandoned. They point to the ten-day period between the date the locks on the home were changed and the date of the garage sale as a basis for their belief that the property had been abandoned, noting the lack of any allegation that any communication or claim of ownership was made to them by the Sneeds prior to the sale. They rely on the example given in *Cowan* of a hunter who deliberately fires a gun at what he believes to be a deer but is actually a person. *See Cowan*, 945 S.W.3d at 828. The *Cowan* court explained, "[t]hough firing the gun was intentional, the harm can reasonably be characterized as an 'accident.'" *Id.* The Drews argue that although their act of selling the Sneeds' property was deliberate, it should be considered accidental because it was done without knowledge of the "pertinent fact" that the Sneeds had not abandoned the property.

Farm Bureau relies on *Maupin* to argue that the conduct alleged in the Sneeds' petition was intentional and not an accidental occurrence covered by the policy. In *Maupin*, Maupin Construction Company entered into a contract to improve a state highway. *Maupin*, 500 S.W.2d at 633. The contract required Maupin to obtain and furnish "borrow material for roadway fills." *Id.* Maupin entered into a contract to purchase borrow material from Fred Kipper, and removed 5,744 cubic yards of borrow material from property occupied by Kipper. *Id.* at 634. It was later determined that the property from which the borrow material was removed was actually owned by three men named Meyer. *Id.* The Meyers sued Maupin "in trespass alleging that Kipper was not authorized to execute the agreement in question." *Id.* Maupin called upon Argonaut, its insurance carrier, to defend the suit. Although the trial court and court of appeals concluded that

–6–

Argonaut had a duty to defend because the removal of the material was "an occurrence or accidental damage or injury to the property of another" within the policy's terms, the supreme court disagreed. Quoting *Thomason v. United States Fidelity & Guaranty Co.*, 248 F.2d 417, 419 (5th Cir. 1957), the court explained that "'[w]here acts are voluntary and intentional and the injury is the natural result of the act, the result was not caused by accident even though that result may have been unexpected, unforeseen and unintended. There was no insurance against liability for damages caused by mistake or error.'" *Maupin*, 500 S.W.2d at 635. The court then applied this reasoning to the facts presented to conclude that there was "no coverage under the policy for damages caused by mistake or error as to the ownership of the property in question." *Id.* Maupin's acts "were voluntary and intentional, even though the result or injury may have been unexpected, unforeseen, and unintended." *Id.*

The *Maupin* court distinguished its opinion in *Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396 (Tex. 1967). *See Maupin*, 500 S.W.2d at 634. In *Orkin*, a rice crop was damaged by the application of a pesticide. *Id.* The *Orkin* court construed the term "accident" in the applicable insurance policy to include "negligent acts of the insured causing damage which is undesigned and unexpected." *Id.* The *Maupin* court concluded that *Orkin* did not support Maupin's position, because the acts in question in *Maupin* were intentional.

The Drews rely on our opinion in *Gehan Homes, Ltd.* to distinguish *Maupin*. *See Gehan Homes, Ltd.,* 146 S.W.3d at 839. In *Gehan Homes, Ltd.*, Gehan, a home builder, was sued by customers who alleged that foundation problems in their home were the result of Gehan's negligence. *See id.* at 837. We identified "[t]wo lines of cases defining the term occurrence." *See id.* at 839. The first, following *Maupin*, pertained to coverage of claims for damage caused by alleged intentional torts. *See id.* The second line of cases, following *Orkin*, addressed claims for negligent acts by the insured causing damage which is "the unexpected, unforeseen[,] or

undesigned happening or consequence of an insured's negligent behavior." *See id.* at 839–40 (quoting *Great Am. Ins. Co. v. Calli Homes, Inc.*, 236 F. Supp. 2d 693, 699 (S.D. Tex. 2002) (internal quotation marks omitted)). Cases following *Maupin* generally held that there was no "occurrence," while cases following *Orkin* generally concluded there was an "occurrence" triggering a duty to defend. *See id.* In *Gehan Homes*, we concluded there was a fact issue whether an "occurrence" was alleged under the policy where "[t]he purported damage was an unexpected and undesigned consequence of Gehan's alleged negligence." *Id.* at 833.

In *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8–9 (Tex. 2007), the court cited both *Maupin* and *Orkin* in discussing accidental and intentional conduct. The court noted that "[a]n accident is generally understood to be a fortuitous, unexpected, and unintended event." *Id.* at 8. Citing *Maupin*, the court explained, "[w]e have further said that an intentional tort is not an accident and thus not an occurrence regardless of whether the effect was unintended or unexpected." *Id.* The court continued, "[b]ut a deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly." *Id.* at 8–9 (citing *Orkin*, 416 S.W.2d at 400). The court concluded, "[t]hus, a claim does not involve an accident or occurrence when either direct allegations purport that the insured intended the injury (which is presumed in cases of intentional tort) or circumstances confirm that the resulting damage was the natural and expected result of the insured's actions, that is, was highly probable whether the insured was negligent or not." *Id.* at 9. The court held that allegations of unintended construction defects arising from faulty workmanship may constitute an accident or occurrence sufficient to trigger a duty to defend. *Id.* at 4.

The Drews argue that the Sneeds' conversion claim is not an intentional tort; rather, the Sneeds' allegations are of negligent acts by the Drews. They distinguish *Maupin*, arguing

"[w]hile both the Drews and the insured in *Maupin* acted with volition (the Drews selling property and the *Maupin* insureds taking fill material from land), only the insured in *Maupin* intentionally caused the harm alleged (taking material it knew belonged to someone else)." The Drews conclude that as long as the Sneeds' allegations "do not preclude the possibility that the injury was caused by an accident," the duty to defend is triggered. *See Stumph v. Dallas Fire Ins. Co.*, 34 S.W.3d 722, 729 (Tex. App.—Austin 2000, no pet.).

We are guided, however, by the discussion in *Maupin* regarding mistake or error on the part of the insured:

> The removal of over 5000 cubic yards of borrow material from the Meyers' property by respondents was intentional and deliberate. Although it may be argued respondents had no intent to injure the Meyers, the removal of the material was done under the authority of the contract with Kipper. The fact damage would occur to the Meyers is not material. The respondents relied upon their own investigation and contract with Kipper to form the basis for the removal of the borrow material. Damage complained of here was the removal of the large amount of material from the property. Respondents did exactly what they intended to do. The fact that they did not deal originally with the owners of the property was the mistake or error. There was no insurance against liability for damages caused by mistake or error. The plaintiff's act in trespassing upon the Meyers' property did not constitute an accident. They did what they intended to do by removing the borrow material from the property. The fact that they were unaware of the true owner of the property has no bearing upon whether the trespass was caused by accident. The respondent's acts were voluntary and intentional, even though the result or injury may have been unexpected, unforeseen and unintended. We conclude there was no coverage under the policy for damages caused by mistake or error as to the ownership of the property in question. The damage was not an accident or occurrence within the meaning of this policy.

*Maupin*, 500 S.W. 2d at 635. Similarly, the sale of the Sneeds' possessions was "intentional and deliberate," even if the Drews had no intent to injure the Sneeds. The Drews relied on their purchase of the home at foreclosure in changing the locks and selling the Sneeds' property. *See id.* These actions were not accidental; the Drews "did what they intended to do" by taking and

–9–

selling the property. *Id.* Their acts "were voluntary and intentional, even though the result or injury may have been unexpected, unforeseen, and unintended." *Id.* The damage "caused by mistake or error as to the ownership of the property in question" was not an accident or occurrence under the Drews' insurance policy. *See id.* Farm Bureau established that it was entitled to judgment as a matter of law, and summary judgment in its favor was proper. We overrule the Drews' first issue.

Because we have concluded that summary judgment was proper on the question of Farm Bureau's duty to defend, we need not resolve the Drews' second issue regarding the applicability of the policy exclusion regarding property in the care of the insured.

### C. Sufficiency of summary judgment motion

In their third issue, the Drews contend that Farm Bureau's no-evidence summary judgment motion does not meet the requirements of Texas Rule of Civil Procedure 166a(i) because Farm Bureau did not state the elements of the Drews' causes of action for which there was no evidence. "A no-evidence motion that only generally challenges the sufficiency of the non-movant's case and fails to state the specific elements that the movant contends lack supporting evidence is fundamentally defective and cannot support summary judgment as a matter of law." *Jose Fuentes Co. v. Alfaro*, 418 S.W.3d 280, 283 (Tex. App.—Dallas 2013, pet. filed). Farm Bureau's motion, however, specified that Farm Bureau also sought a traditional summary judgment. With its motion, Farm Bureau submitted the insurance policy in question as well as the petitions from the Sneeds' lawsuit.[2] As we have explained, our analysis is limited to the eight corners of these documents. *See Pine Oak Builders, Inc*, 279 S.W.3d at 654. The Drews' third issue does not challenge the sufficiency of Farm Bureau's traditional motion, and

---

[2] During oral argument, Farm Bureau's counsel conceded that the motion was "practically a traditional motion for summary judgment."

–10–

we have concluded that the trial court correctly granted summary judgment in favor of Farm Bureau. We overrule the Drews' third issue.

## CONCLUSION

Having overruled the Drews' three issues, we affirm the trial court's judgment.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE

131619F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BECKY DREW AND ROBERT KEVIN
DREW, Appellants

No. 05-13-01619-CV            V.

TEXAS FARM BUREAU MUTUAL
INSURANCE COMPANY, Appellee

On Appeal from the 298th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-12-12720.
Opinion delivered by Justice O'Neill,
Justice Fillmore and Chief Justice Thomas,
Retired, participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee Texas Farm Bureau Mutual Insurance Company recover
its costs of this appeal from appellants Becky Drew and Robert Kevin Drew.

Judgment entered this 31st day of December, 2014.