[No. D019356. Fourth Dist., Div. One. July 28, 1995.]

INSURANCE COMPANY OF NORTH AMERICA et al., Plaintiffs and Respondents, v.
NATIONAL AMERICAN INSURANCE COMPANY OF CALIFORNIA, Defendant and Appellant.

## COUNSEL

Fisher & Hurst, Dennis Gildea and Lori A. Sebransky for Defendant and Appellant.

Cozen & O'Connor and M. Stuart Goldin for Plaintiffs and Respondents.

## OPINION

**FROEHLICH, J.**—This action involves a dispute over the allocation of liability between two insurance companies which had insured a single

insured, Hacienda Roofing, Inc. (Hacienda). Appellant National American Insurance Company of California (NAICC) insured Hacienda under two liability policies covering the 1984-1985 and 1985-1986 periods. Those policies contained a "broad-form endorsement" expanding the types of coverage afforded Hacienda. Respondent Insurance Company of North America (INA) insured Hacienda under similar policies during succeeding years.

Hacienda was the roofing contractor on a condominium project. The roofs failed. In the ensuing construction defect lawsuit, the general contractor, Buie Corporation (Buie), was held liable to the homeowners association, and Hacienda was held liable (under a "Type I" indemnity agreement) to pay Buie's liability to the homeowners association. INA paid the bulk of Hacienda's liability to Buie. INA now seeks reimbursement from NAICC for NAICC's alleged share of the liability.

The issue is whether Hacienda's liability to Buie was covered by NAICC's policy. NAICC asserts that a clause in its policy (the "work-performed" exclusion) excludes coverage for Hacienda's liability to Buie; the trial court, applying *Maryland Casualty Co.* v. *Reeder* (1990) 221 Cal.App.3d 961 [270 Cal.Rptr. 719], rejected that contention. NAICC alternatively argues that even if the work-performed exclusion did not apply, all damages to the roofs were part of a "single occurrence," and hence any coverage was limited to the first policy year because that was the year in which the damages first became manifest. The trial court rejected that argument, and instead required both of NAICC's policies to cover portions of the liability.

We conclude the trial court correctly construed the focus of the work-performed exclusion, and substantial evidence exists to support the conclusion that both of NAICC's policies were implicated.

I. *Factual Background*

A. *The Insurers*

Hacienda was a roofing contractor. NAICC and INA had insured Hacienda under substantively identical general liability policies which contained a broad-form endorsement. NAICC had coverage for two policy years (1984-1985 and 1985-1986), and INA provided coverage for the next three policy years.

## B. *The Project*

Buie developed the Oaks North condominium project. Buie subcontracted the roofing portion of the project to Hacienda. As part of its responsibilities, Hacienda was to install its roof in a manner which incorporated the work and materials previously supplied or installed by other subcontractors.

As partial consideration for receiving the subcontract, Hacienda agreed to indemnify Buie under a so-called Type I indemnity agreement. That agreement provided:

"Subcontractor [Hacienda] shall further indemnify Contractor [Buie] and Owner against, and hold them, and each of them, harmless for all claims, demands and liability of every nature arising from injury to persons or property resulting from Subcontractor's performance of this Agreement.

"Such indemnification shall extend to all claims, demands and liability arising from the activities of sub-subcontractors and Subcontractor's suppliers while engaged in the performance of the work to be done under this Agreement. This indemnification agreement applies to claims, demands and liability for injury contributed to by the negligence or other misconduct of Contractor [Buie], as long as the injury is caused in part by the negligence or misconduct of Subcontractor, or by its subcontractor, employees, agents or suppliers."

## C. *The Liability Lawsuit*

The homeowners association sued Buie and others for defects in the project. The suit alleged, among other things, that the built-up and tile roofs were defectively constructed and installed, causing decay in the roof and structural members. Buie cross-complained for indemnity against Hacienda and other subcontractors.

The jury in the underlying action found Buie strictly liable for the defects, and found damages from the built-up and tile roof defects in the amount of $2,492,832.95.[1] The jury found Hacienda had caused $931,900.26 of those damages. With the exception of the structural defects and the tile pot shelves defects, both of which the jury concluded were solely the result of Buie's negligence, the jury allocated the fault among several of the parties. The jury

---

[1]The jury also found other defects had caused some damage: "wood pot shelves" defects in the amount of $33,344.46; "tile pot shelves" defects in the amount of $85,597.03; and structural defects in the amount of $38,240.65. The jury also found Buie liable for investigation expenses of $129,771 and past cost of repairs in the amount of $95,000.

assessed 32.4 percent of the fault to Hacienda, 2 percent to two other subcontractors, and the balance to Buie.[2]

On Buie's cross-complaint against Hacienda, the trial court upheld the enforceability of the Type I indemnity agreement, concluding that under the express terms of the indemnity agreement Hacienda was obligated to indemnify Buie for the entire amount of roof damages which Buie was obligated to pay the homeowners, including the costs of investigation and repair. Buie also was awarded its attorney fees and costs. The trial court ultimately awarded Buie attorney fees and costs of $289,983.72.

### D. *The Settlement With Buie*

The total judgment in favor of Buie and against Hacienda was $2,847,593.67, which included attorney fees and costs of $289,983.72. To discharge that judgment, INA paid $2 million and NAICC paid $309,983.72 to Buie.

### II. *The Present Action*

INA's suit claims INA is entitled to some reimbursement from NAICC because part of the damage was manifested during NAICC's two policy periods and was within the coverage of the policies because NAICC provided coverage for any liability assumed by Hacienda under an "incidental contract"—that is, the type of liability Hacienda had assumed by entering into the Type I indemnity agreement with Buie. INA contended that, on the facts of this case, the work-performed exclusion had only partial application, and to the extent it was not applicable INA claimed the right to partial indemnity from NAICC.

NAICC sought to avoid *all* liability by contending the work-performed exclusion applied to all of the roofing damage. NAICC alternatively argued that to the extent it had any liability all of the damages were attributable to its first policy (the 1984-1985 policy year), because 1984-1985 was the year the damages to the first units became manifest. NAICC also contended the court miscalculated the remaining available policy limits under its 1984-1985 policy. NAICC argued that its payment of $289,983.72 was paid as part of its indemnity obligation under the first policy, thereby depleting the

---

[2]The special verdict form assessed 2 percent of the fault to two sheet metal contractors, and instructed the jury that it was to assess to Buie all fault attributable either to Buie *or* to any parties not present in the litigation. For example, to the extent some of the fault was attributable to the framing contractor, that percentage was amalgamated with the fault directly attributable to Buie's negligence.

remaining limits and leaving just over $5,000 on the first policy. Finally, NAICC contended it had no liability for certain attorney fees incurred by an appellate lawyer.

III.  *The Work-performed Exclusion Was Properly Construed and Applied Here*

■  NAICC first contends it had no obligation to indemnify Hacienda because of the work-performed exclusion. We conclude that because Hacienda had purchased a broad-form endorsement expanding the coverage afforded by the comprehensive general liability policy, Hacienda obtained coverage to the extent it was liable for damage to the roofs caused by the negligence of third parties.

A.  *The Policy Language*

Under a comprehensive general liability policy which does *not* contain a broad-form endorsement, exclusion (o) excludes "property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof." The effect of this clause is to eliminate coverage for damage the insured or those working on its behalf might cause to the very work the insured is constructing, and places on the insurer the cost of repairing the work. The courts, construing clause (o), have opined: "[Such a policy] is neither a performance bond nor an 'all risk' policy. [Citation.] Rather, the effect of the policy is to make the contractor stand its own replacement and repair losses while the insurer takes the risk of injury to the property of others. [¶] . . . By excluding repair and replacement losses, the insurer gives the contractor an incentive to exercise care in workmanship thereby reducing the risk that is covered: damage to property of third parties. Coverage of repair and replacement costs would undermine this incentive." (*Western Employers Ins. Co.* v. *Arciero & Sons, Inc.* (1983) 146 Cal.App.3d 1027, 1031 [194 Cal.Rptr. 688].)

Had exclusion (o) been the operative exclusion, the damage to the roofs (i.e., the work performed) would have been excluded whether caused by Hacienda's negligence or by the negligence of third parties working with Hacienda.

However, Hacienda purchased a broad-form endorsement, which, among other things, replaced exclusion (o) with a different exclusion. The modified language excluded ". . . property damage to work performed *by the named insured* arising out of such work or any portion thereof" and thus deleted the "or on behalf of" clause from the highlighted language. In *Maryland*

*Casualty Co.* v. *Reeder, supra,* 221 Cal.App.3d 961, this court construed the intent behind the modified language. In *Maryland Casualty* the insureds (a developer and a general contractor) had built and sold condominiums, and were later sued for damages from defective construction. (*Id.* at pp. 965-966.) The insurer claimed there was no coverage because the condominiums constituted the "work" and the insureds had no coverage for the work they performed. However, the *Maryland Casualty* court, examining the language and intent of the broad-form endorsement, concluded the modified language was designed to provide the insured with coverage for damage to the insured's work which resulted from the negligence of the insured's subcontractors. (*Id.* at pp. 971-974.)

### B. *Application of the Broad-form Work-performed Exclusion*

The broad-form endorsement thus continues to exclude coverage to the extent Hacienda damaged the roofs through its own negligence, but provides coverage to the extent Hacienda had liability for damage to the roofs caused by the negligence of third parties for whom Hacienda was derivatively liable. This was precisely how the trial court applied the exclusion in this case. In the underlying action the jury and court found (1) Hacienda was derivatively liable under the Type I indemnity agreement for the damages to the roof which resulted from the negligence of third parties (i.e., Buie and other subcontractors); (2) the negligence of several parties (i.e., Hacienda, Buie and other subcontractors) caused the damages; and (3) of the total roof damages of $2,492,832.95, a portion thereof ($931,900.26) was caused by Hacienda's negligence.

With these findings the court in this action concluded the work-performed exclusion did not act as a complete bar to INA's action for reimbursement, because part of the roof damage ($1,560,932.69) did *not* result from Hacienda's negligent work and hence was *not* excluded under the broad-form endorsement but was an amount for which Hacienda was derivatively liable.[3] We now turn to the various challenges NAICC makes to this conclusion.

NAICC's principal contention effectively urges that *Maryland Casualty* was wrongly decided. NAICC argues that the exclusion (by excluding

---

[3]To determine the extent of NAICC's liability to INA for reimbursement, the court went through a series of calculations. It first apportioned the non-Hacienda caused damage between NAICC and INA. It then divided NAICC's amount (i.e., the non-Hacienda-caused damage for which NAICC was liable) between NAICC's two policy years. It then applied a percentage calculation to reach the final determination of how much each of the two policies was required to pay in order to reimburse INA.

damage "arising out of [Hacienda's] work") is triggered so long as Hacienda was a contributing cause of the damage to the roofs, even though the negligence of others *also* created damage for which Hacienda is derivatively liable. If this were correct, *Maryland Casualty* would be gutted: damages to a work *always* arise out of a developer's or general contractor's work. The import of *Maryland Casualty* is to distinguish between the insured's liability for its own negligence for which there is no coverage, and the insured's derivative liability for the negligence of others for which there is coverage. Since *Maryland Casualty* construed the language of the exclusion as providing coverage in the latter instance, NAICC's claim that such coverage should be extinguished if the insured was also contributorily negligent would effectively destroy the efficacy of the coverage *Maryland Casualty* concluded the broad-form endorsement would provide.

NAICC argues the underlying action necessarily adjudicated that all of the damages arose out of Hacienda's negligence, since enforcement of the Type I indemnity agreement depended on a finding the claim arose from Hacienda's activity. While the court in the underlying action did hold Hacienda liable for *all* roofing damages, it did so *not* because Hacienda's work was the sole cause of 100 percent of the damage, but because of the Type I indemnity agreement. That agreement made Hacienda contractually liable for all damages, including those caused by the negligent conduct of others (i.e., the type of coverage afforded under *Maryland Casualty*), so long as *some* of the fault was attributable to Hacienda. Thus, so long as there was some evidence to support the conclusion Hacienda was held liable derivatively (i.e., for the negligent work of others) rather than for its sole negligence, the work-performed exclusion would apply only to the latter, not to the entire, liability.

NAICC claims there was no evidence others were at fault in causing the damages for which Hacienda was held liable. NAICC is wrong. The underlying judgment did assess comparative fault to Buie and two subcontractors; an expert testified in INA's action about both faulty workmanship, which could have been attributable to other trades, and scheduling (normally Buie's responsibility as general contractor); and the project plans showed the scope of the roofing work was to include "incorporat[ion] [of] other trades' flashing, sleeves and jacks," permitting an inference other trades *did* supply work to the job and Hacienda then overlaid its work onto the prior work.

At bottom, NAICC seems to assume that the work-performed exclusion and the Type I indemnity agreement are triggered by the same facts. NAICC is wrong. The focus of each of the two contracts is distinct. The indemnity

agreement focuses on creating derivative liability for the negligence of others and uses the "arising from" language to define the scope of that derivative liability. The exclusion focuses on the insured's own conduct and uses the "arising out of" language to except from coverage those damages caused by the insured's own conduct, while leaving coverage for injuries caused by others, for which injuries the insured is derivatively liable.

Because the indemnity agreement creates derivative liability, and the exclusion (as construed by *Maryland Casualty*) does not bar coverage for such liability, the trial court correctly ruled Hacienda's liability to Buie was within the scope of coverage afforded by NAICC's policy.

## IV. *The Trial Court Correctly Held That Both of NAICC's Policies Were Implicated*

■ NAICC alternatively argues there was only a single occurrence and all damages must be limited to the 1984-1985 policy, since this was the policy period during which the damages from the defective construction first became manifest.

The factual background for this contention is not disputed. The condominium project was built in nine phases. The first three phases were completed during NAICC's 1984-1985 policy period; the second three phases were completed during NAICC's 1985-1986 policy period; and the remaining buildings were completed during INA's policy coverage. There was physical damage to the first three phases during NAICC's 1984-1985 policy period, and there was physical damage to the second three phases during NAICC's 1985-1986 policy period. In all phases the roofs were constructed the same way (i.e., using the same plans, installation methods and contractor) and the same or similar defects caused the same or similar damages to the buildings in each of the phases.

NAICC relies on the "manifestation" rule in its attempt to limit coverage to the 1984-1985 policy. NAICC contends the 1984-1985 policy is liable for *all* damages, including damage to the phases not completed until the 1985-1986 policy period, arguing the 1984-1985 insurance policy was on risk at the time damages first became manifest and hence such policy is responsible for all damages, including those which surfaced after that policy lapsed. While NAICC correctly states the general rule applicable to first party policies (see *Prudential-LMI Com. Insurance* v. *Superior Court* (1990) 51 Cal.3d 674, 699 [274 Cal.Rptr. 387, 798 P.2d 1230]), the Supreme Court recently announced that a different analysis is applicable to third party policies. (*Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645 [42 Cal.Rptr.2d 324, 897 P.2d 1].)

The *Montrose* court cautioned that a key question is whether property damage occurred "during the policy period." (10 Cal.4th at p. 699.) Thus, a key predicate to deciding which policy is implicated is that some damage (i.e., physical injury to property or person) has *actually* been suffered during the relevant policy period. Here NAICC claims that the damage to phases 4 through 6 occurred *before these phases were even finished*, but there is no evidence any of those buildings *actually* suffered any appreciable damage prior to completion. Indeed, there was no evidence Hacienda had even *begun* its roofing work on phases 4 through 6 when the damages first became manifest in phases 1 through 3. It would be illogical to hold that an insurance policy covers damages to a structure on which its insured had not even worked during the policy period, merely because the insured had shown a proclivity for poor workmanship on other buildings during the policy period.[4] We must examine the date the injury became appreciable, not the date of the negligent cause of the injury. (*Remmer* v. *Glenn Falls Indem. Co.* (1956) 140 Cal.App.2d 84, 88 [295 P.2d 19, 57 A.L.R.2d 1379].)

NAICC's reliance on *Economy Lumber Co.* v. *Insurance Co. of North America* (1984) 157 Cal.App.3d 641 [204 Cal.Rptr. 135] is misplaced. NAICC claims *Economy Lumber* held that where one defect causes damages to multiple units, there is only one occurrence. NAICC misreads *Economy Lumber*. The court there decided only whether application of defective sidings could be treated as an "accident," not whether all eight of the houses to which the defective siding was applied would be treated as one occurrence rather than eight. (*Id.* at pp. 647-648.) *Economy Lumber* is of no aid to NAICC.[5]

---

[4]Indeed, NAICC's theory could lead to rather absurd results. For example, the date of manifestation is often deemed to be coextensive with the date the injured party's cause of action accrued—that is, the date on which a reasonable person would have noticed appreciable damage. (Cf. *Prudential-LMI Com. Insurance* v. *Superior Court, supra,* 51 Cal.3d 674, 699 [suggesting manifestation and "inception of the loss" for purposes of first party claims may be the same date].) Under NAICC's theory, the manifestation of the injury in the first three phases would trigger the causes of action against Hacienda even for unconstructed buildings.

[5]NAICC also relies on two federal cases: *Appalachian Ins. Co.* v. *Liberty Mut. Ins. Co.* (3d Cir. 1982) 676 F.2d 56, and *Chemstar, Inc.* v. *Liberty Mut. Ins. Co.* (C.D.Cal. 1992) 797 F.Supp. 1541. There were two issues in *Appalachian:* (1) whether numerous injuries from a single cause (a discriminatory employment policy) should be treated as a single or multiple occurrence; and (2) when the injury occurred (whether at the time the policy was adopted or when the injurious effects of the policy were felt). On the issue of "when," the court concluded the injury occurred when the injurious effects of the policy became manifest. Even if that criteria could be applied here, the injurious effects of the poor workmanship could not have been felt in buildings 4 through 6 until those buildings existed.

In *Chemstar,* 28 homeowners sued the insured because of pitting of the plaster on their homes. The issues were: (1) the number of "occurrences"; and (2) the time of the occurrences. (*Chemstar Inc.* v. *Liberty Mut. Ins. Co., supra,* 797 F.Supp. at pp. 1543-1544.) The court in

Since there was no evidence any of the buildings in phases 4 through 6 showed actual damage until the second of NAICC's policy periods, the trial court correctly ruled that both of NAICC's policies were implicated.

## V. *The Trial Court's Award Did Not Exceed the Remaining Policy Limits Available for This Claim*

NAICC next urges that the 1984-1985 policy limits had only $5,616.28 remaining to pay this claim, and hence the award to INA of $296,000 from that policy was error.

The 1984-1985 policy had a $500,000 limit. The parties agree NAICC paid $184,000 on two unrelated claims, reducing its remaining limits to $316,000. NAICC also paid $309,983.72 as its contribution to the settlement of the Buie/Hacienda litigation, of which $20,000 was for damage-related items. The dispute is over how to account for the remainder of that contribution (i.e., $289,983.72), which represented the amount awarded to Buie for attorney fees and costs in the underlying litigation. NAICC claimed the $289,983.72 should be applied to reduce the remaining policy limits under the 1984-1985 policy, while INA contended the $289,983.72 represented a "cost[] taxed against the Insured in any suit defended by the Company" under the "Supplementary Payments" section of the policy.[6]

We conclude the trial court correctly held that the $289,983.72 was an amount falling under the Supplementary Payments section of the policy. In the underlying action Buie asserted entitlement to indemnity based on, among other theories, a contractual agreement. That contract included a "prevailing party" clause entitling the prevailing party to its attorney fees. Attorney fees under such a contractual clause are allowable as costs. (Code Civ. Proc., §§ 1032, 1033.5, subd. (a)(10)(A).) In the underlying Buie v. Hacienda suit, the court's award against Hacienda included "costs," among

---

*Chemstar* used the "causation" rule to determine whether there was one or more occurrences, and concluded the single cause of all 28 cases of pitting was the failure to warn that the plaster was unsuitable for indoor use. (*Id.* at pp. 1546-1547.) The court then ruled that the policy in effect at the time the first home experienced pitting was liable for all losses arising from the failure to warn. (*Id.* at p. 1552.) *Chemstar* cited no authority for this latter conclusion. More importantly, *Chemstar* involved a single cause (failure to warn) which produced multiple injuries. In this case, however, there was not a "single cause." Buildings 4 through 6 were not damaged because of the work done on buildings 1 through 3, but instead were damaged by the work done on buildings 4 through 6. However valid *Chemstar's* facts might be, they are irrelevant to this case.

[6]The Supplementary Payments section provided that NAICC would pay "*in addition to the applicable limit of liability*: (a) all expenses incurred by [NAICC], *all costs taxed against the insured in any suit defended by [NAICC]* . . . ." (Italics added.)

which were Buie's attorney fees. This evidence supports the conclusion the $289,983.72 was a "cost" assessed against Hacienda under the prevailing party clause, which would fall within the Supplementary Payments provision.

NAICC argues the attorney fees awarded Buie were fees incurred by Buie in defending itself against the homeowners association, rather than fees incurred in its suit against Hacienda, and hence the only basis for "passing through" those fees was under the indemnity clause (¶ J of the contract), not under the prevailing party clause (¶ U of the contract). We reject this claim. First, NAICC cites no evidence to support its claim that the fees awarded Buie in the underlying action were to defend the homeowners' action rather than to prosecute Buie's contractual claim against Hacienda. Second, the award in the underlying action demonstrates the trial court there could identify when a cost award was attributable to the indemnity agreement, since the underlying judgment identified four separate categories of costs Buie was to recover, one of which was "Expert witness fees paid by Buie *pursuant to ¶ J.*" (Italics added.) However, the judgment awarding attorney fees incurred by Buie was not similarly limited. This evidence permits the inference the award of attorney fees fell under a provision other than paragraph J—that is, that the award was under the "prevailing party clause" of paragraph U.

VI.  *The Trial Court Correctly Required NAICC to Contribute to the Fees Incurred by Appellate Counsel*

NAICC's final challenge asserts it was improper to require NAICC to pay one-half of the fees paid to Mr. Lincoln, the attorney hired by INA to represent Hacienda on appeal. NAICC does not dispute the fact that an insurer's duty to defend encompasses the duty to pursue an appeal where reasonable grounds exist for such an appeal. (*Jenkins* v. *Insurance Co. of North America* (1990) 220 Cal.App.3d 1481, 1489-1491 [272 Cal.Rptr. 7].) Lincoln testified that he was retained to represent Hacienda's interests on appeal, and that his review of the material identified appellate issues which he believed were worthy of pursuit. He indicated the fees incurred in that effort were approximately $43,000 and were fair and reasonable.

NAICC argues it was improper to charge one-half of Lincoln's fees to NAICC because the evidence did not disclose what portion of the fees was related to the appeal and what portion to Mr. Lincoln's efforts to settle the case, which included an effort to obtain contribution from NAICC to fund

such a settlement.[7] ■ While the evidence suggests Lincoln did engage in both appellate work and settlement discussions, NAICC cites no authority holding that an attorney hired by an insurer to represent the best interests of its insured is barred from billing the insurer for settlement efforts, including an effort to convince the insurer to contribute to settlement.

Ample evidence exists to show Lincoln's efforts were undertaken in the best interests of the insured, his fees for such efforts were reasonable, and such fees should be paid under the obligation to pay defense costs.

DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Haller, J., concurred.

A petition for a rehearing was denied August 24, 1995, and appellant's petition for review by the Supreme Court was denied November 21, 1995.

---

[7]NAICC also claims it was improper to charge NAICC for Lincoln's fees because NAICC was already paying separate counsel to represent Hacienda's interests on appeal. Our effort to locate evidence supporting that claim was fruitless.