**NOKIA, INCORPORATED, Appellant,**

**v.**

**ZURICH AMERICAN INSURANCE COMPANY, Federal Insurance Company, and National Union Fire Insurance Company, Appellees.**

No. 05–04–01729–CV.

Court of Appeals of Texas, Dallas.

Aug. 21, 2006.

Rehearing Overruled Oct. 18, 2006.

Kirk Chamberlin, Nicholas R. Andrea, Charlston, Revich & Chamberlin, LLP, Los Angeles, CA, Michael W. Huddleston, Shannon, Gracey, Ratliff & Miller, L.L.P., Rebecca Lynn Kimmel, Stephanie Michelle Dooley, Carrington, Coleman, Sloman & Blumenthal, L.L.P., Dallas, James N. Isbell, Thompson, Coe, Cousins & Irons, L.L.P., Kenneth G. Engerrand, Houston, Philip King, Meckler, Bulger and Tilson, Chicago, IL, for appellees.

Before Chief Justice THOMAS and Justices RICHTER and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

This is the second of two insurance coverage disputes in which we interpret the duty to defend in commercial general liability policies. Appellant claims the trial court erred by granting summary judgment in favor of the insurance carrier and against the insured, a manufacturer of wireless handheld telephones (cell phones), on the insurers' duty to defend the manufacturer in underlying class action lawsuits seeking damages for alleged biological injury from exposure to allegedly harmful radiation emitted by the manufacturer's cell phones when used without a headset.[1]

Eric J. Mayer, Susman Godfrey LLP, Houston, Ian B. Crosby, Susman Godfrey LLP, Seattle, WA, for appellant.

In this case, Nokia, Inc. was named as one of many defendants in the underlying lawsuits.[2] The complaints alleged that de-

1. The first insurance coverage dispute is *Samsung Electronics America, Inc. v. Federal Insurance Co.*, No. 05–04–01316–CV, 202 S.W.3d 372, 2006 WL 2391095 (Tex.App.-Dallas 2006), also decided today. Five of the six complaints at issue in this appeal were also at issue in *Samsung*.

2. Four of the six complaints, *Pinney v. Nokia, Inc.*, No. 01–MD–1421 (Cir.Ct., Balt., Apr. 19,

2001); *Farina v. Nokia, Inc.*, No. 002527 (Ct. of Common Pleas, Phila. County, Apr. 19, 2001); *Gilliam v. Nokia, Inc.*, No. 15692–2001 (N.Y. Sup.Ct., Bronx County, Apr. 23, 2001); and *Gimpelson v. Nokia, Inc.*, No. 2001CV38932 (Ga.Super. Ct., Fulton County, Jun. 8, 2001), which are substantially similar in all material respects, assert a combination of state law claims for strict products liability, violations of state consumer laws, breach of

fendants' cell phones emit harmful radio frequency radiation that potentially causes injury to human cells when the cell phones are used without a headset. Nokia tendered the defense of the complaints to its insurers, from whom it had purchased commercial general liability (CGL) and excess umbrella liability insurance policies. Zurich Insurance Company sought a declaratory judgment against Nokia, Federal Insurance Company, and National Union Fire Insurance Company that its policies did not obligate it to defend or indemnify Nokia in the underlying lawsuits. Nokia counterclaimed against Zurich and cross-claimed against Federal and National Union asserting breach of contract, breach of the duty of good faith and fair dealing, and violations of the insurance code. Zurich filed a motion for summary judgment on its duty to defend and indemnify Nokia. Nokia, Federal and National Union each filed its own motion for summary judgment on those same issues. Without stating the grounds, the trial court granted the motions of Zurich, Federal and National Union, holding the insurers had no duty to defend or indemnify Nokia in the underlying lawsuits. The court denied Nokia's motion on those same issues. The trial court then severed these claims for purposes of appeal. We affirm in part, reverse and render in part, and reverse and remand in part.

## STANDARD OF REVIEW

■■■ We review a grant of summary judgment de novo. *Gehan Homes, Ltd. v.*

*Employers Mut. Cas. Co.*, 146 S.W.3d 833, 837 (Tex.App.-Dallas 2004, pet. filed); *Reynosa v. Huff*, 21 S.W.3d 510, 512 (Tex. App.-San Antonio 2000, no pet.). When all parties move for summary judgment, each bears the burden of establishing it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex.2000). If the trial court grants one motion and denies the other, the non-prevailing party may appeal the granting of the prevailing party's motion as well as the denial of its own motion. *Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex.1996). We review the summary judgment evidence presented by the parties and determine all questions presented. *Dallas Morning News*, 22 S.W.3d at 356.

■■■ When the trial court does not specify the basis for its ruling, it is appellant's burden on appeal to show that each of the independent grounds asserted in support of summary judgment is insufficient to support the judgment. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995); *Caldwell v. Curioni*, 125 S.W.3d 784, 789 (Tex.App.-Dallas 2004, pet. denied). And when the trial court's order granting summary judgment does not specify the grounds upon which it was granted, we will affirm the judgment if any of the theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 567 (Tex. 1989). We may affirm the trial court's summary judgment or reverse and render the judgment the trial court should have rendered. *Morales*, 924 S.W.2d at 922;

---

implied warranties, negligent misrepresentation, fraud by concealment, civil battery, and civil conspiracy. These same complaints were the underlying lawsuits in the *Samsung* case. For consistency, we refer to these complaints as the *Pinney* complaints. The fifth complaint, *Dahlgren v. Audiovox Communications Corp.*, No. 02–0007884 (D.C.Super.Ct., Sep. 6, 2002), asserts claims for violations of state consumer laws and unjust enrichment.

It also was an underlying lawsuit in the *Samsung* case. For consistency, we refer to this complaint as the *Dahlgren* complaint. The sixth complaint, *Naquin v. Nokia Mobile Phones, Inc.*, No. 00–2023 (E.D.La. Apr. 20, 2001), was not involved in the *Samsung* case. The *Naquin* plaintiffs asserted claims for fraud by concealment, civil conspiracy, breach of contract, and unjust enrichment.

*Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988).

## APPLICABLE LAW

The insurer's duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a claim within the terms of the policy. *Gehan Homes, Ltd.,* 146 S.W.3d at 838. The duty to defend is determined by the allegations in the underlying pleadings and the language of the insurance policy. *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997); *Gehan Homes, Ltd.,* 146 S.W.3d at 838. This standard is referred to as the "eight corners" rule. *Nat'l Union Fire Ins. Co.,* 939 S.W.2d at 141; *Gehan Homes, Ltd.,* 146 S.W.3d at 838. When we apply the eight corners rule, we give the allegations in the underlying lawsuit a liberal interpretation in favor of the insured. *Gehan Homes, Ltd.,* 146 S.W.3d at 838. We consider the allegations in light of the policy provisions without reference to their truth or falsity and without reference to what the parties know or believe to be the true facts. *Id.; See Argonaut Sw. Ins. Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex.1973). We presume the facts alleged in the underlying lawsuit are true when gauging the insurer's duty to defend. *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.,* 387 S.W.2d 22, 24 (Tex.1965); *Gehan Homes, Ltd.,* 146 S.W.3d at 838. We do not read facts into the pleadings, look outside the pleadings, or "imagine factual scenarios which might trigger coverage." *Nat'l Union Fire Ins. Co.,* 939 S.W.2d at 142; *Gehan Homes, Ltd.,* 146 S.W.3d at 838. A liability policy obligates the insurer to defend the insured against any claim that could potentially be covered, regardless of the claim's merits.

**3.** We quote from Zurich's CGL policies. The parties agree that any variation in wording

*Heyden Newport Chem. Corp.,* 387 S.W.2d at 26; *Gehan Homes, Ltd.,* 146 S.W.3d at 838. If the pleadings do not state facts sufficient to bring the claim clearly within or without the coverage, the general rule is that the insurer is obligated to defend if a claim potentially falls within the coverage of the policy. *Nat'l Union Fire Ins. Co.,* 939 S.W.2d at 141. A duty to defend any of the claims against the insured requires the insurer to defend the entire suit. *Gehan Homes, Ltd.,* 146 S.W.3d at 838; *Pro–Tech Coatings, Inc. v. Union Standard Ins. Co.,* 897 S.W.2d 885, 892 (Tex.App.-Dallas 1995, no writ); *Stumph v. Dallas Fire Ins. Co.,* 34 S.W.3d 722, 728 (Tex. App.-Austin 2000, no pet.).

## DISCUSSION

Our analysis of whether the insurers owe Nokia a duty to defend in the underlying lawsuits begins with the language of the insurance policies, which provides [3]:

> The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of
>
> A. **bodily injury** ...
>
> * * *

to which this insurance applies, caused by an **occurrence,** and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** ..., even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient....

* * *

## SECTION VI—DEFINITIONS

* * *

among the policies at issue in this appeal does not affect our analysis.

3. "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

## 1. Do Allegations of "Biological Injury" Potentially State a Claim for "Bodily Injury" Under the Policies?

██ Nokia contends its insurers must defend against the complaints because the complaints seek "damages because of bodily injury" by alleging that Nokia's cell phones caused biological injury in the form of subclinical damage to plaintiffs' cellular structures and processes. Nokia relies on *Guaranty National Insurance Co. v. Azrock Industries, Inc.*, 211 F.3d 239 (5th Cir.2000) to support its argument that subclinical harm triggers coverage even if the harm is not manifested during the policy period. Citing *Trinity Universal Insurance Co. v. Cowan*, 945 S.W.2d 819 (Tex. 1997), the insurers contend that allegations of cellular injury and biological effects do not allege impairment of the body and are not injuries "to the physical structure of the human body" and do not constitute "bodily injury" within the meaning of their respective policies. *See id.* at 823.

In *Samsung Electronics America, Inc. v. Federal Insurance Co.*, No. 05–04–01316–CV, 202 S.W.3d 372, 2006 WL 2391095 (Tex.App.-Dallas, Aug. 21, 2006, no pet. h.), also decided today, we addressed this precise issue. In that case, we analyzed the definition of "bodily injury" in the policies at issue there and noted that it did not impose a diagnosis or manifestation requirement. We noted that an allegation of biological injury to human cells was not clearly within or excluded by the policies' provisions. We also reviewed decisions by other jurisdictions that have concluded "bodily injury" includes injuries at the cellular level. *See, e.g., Ericsson, Inc. v. St. Paul Fire & Marine Ins. Co.*, 423 F.Supp.2d 587 (N.D.Tex.2006) (mem. op.); *N. Ins. Co. of N.Y. v. Baltimore Bus. Commc'ns*, 68 Fed.Appx. 414, 419 (4th Cir. 2003) (per curiam) (not designated for publication); *Motorola, Inc. v. Associated Indem. Corp.*, 878 So.2d 824, 837 (La.Ct.App. 2004); *Voicestream Wireless Corp. v. Fed. Ins. Co.*, 112 Fed.Appx. 553, 555–56 (9th Cir.2004) (mem. opin.) (not designated for publication) (all finding same complaints at issue here alleged "bodily injury"); *see also Ins. Co. of N. Am. v. Forty–Eight Insulations, Inc.*, 657 F.2d 814, 816 (6th Cir.1981) (insurance coverage triggered at exposure because "bodily injury" in form of tissue damage occurred at or shortly after inhalation of asbestos fibers); *Keene Corp. v. Ins. Co. of N. Am.*, 215 U.S.App. D.C. 156, 667 F.2d 1034, 1047 (D.C.Cir. 1981) ("bodily injury" means "any part of the single injurious process that asbestos-related diseases entail"); *Chantel Assocs. v. Mount Vernon Fire Ins. Co.*, 338 Md. 131, 656 A.2d 779, 785–86 (Md.1995) (exposure to lead resulting in "direct and indirect damage to cells, tissues, and organs" sufficient to allege "bodily injury"); *J.H. France Refractories Co. v. Allstate Ins. Co.*, 534 Pa. 29, 626 A.2d 502, 506 (1993) (describing injury to cells caused by exposure to asbestos and concluding "bodily injury" occurred in all stages of disease progression); *Zurich Ins. Co. v. Raymark Indus.*, 118 Ill.2d 23, 112 Ill.Dec. 684, 514 N.E.2d 150, 159–60 (1987) ("bodily injury" occurred upon inhalation of asbestos even if disease manifests outside policy period). *But see Abex Corp. v. Maryland Cas. Co.*, 252 U.S.App. D.C. 297, 790 F.2d 119, 124–25 (D.C.Cir.1986) (injury need not be manifest during policy period but must exist in fact and does not necessarily occur on

exposure); *Eagle–Picher Indus. v. Liberty Mut. Ins. Co.*, 682 F.2d 12, 19 (1st Cir. 1982) (injury must manifest to trigger coverage).

We reasoned that to exclude biological injury to human cells from the definition of "bodily injury" would require us to read language into the policy that was not there. *Samsung*, 202 S.W.3d at 380, 2006 WL 2391095 at *6; *see Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 142; *Gehan*, 146 S.W.3d at 843. As a result, we concluded that an allegation of biological injury to human cells potentially stated a claim for "bodily injury" under the CGL policies at issue in that case. *Samsung*, 202 S.W.3d at 381, 2006 WL 2391095 at *7. Because the definition of "bodily injury" contained in the policies here is in all material respects the same as the definition at issue in *Samsung*, we know of no reason to revisit that issue in this case. Accordingly, we conclude that, based on our analysis in *Samsung*, allegations of injury to human cells potentially allege a covered claim for "bodily injury" for purposes of the policies at issue in this appeal.

## 2. Do the Underlying Complaints Allege "Bodily Injury" and "Damages Because of Bodily Injury"?

■ Our next step is to determine whether the complaints in the underlying actions actually alleged plaintiffs suffered "bodily injury" and sought "damages because of bodily injury." Nokia contends the underlying plaintiffs alleged they suffered present injury to their bodily cells from exposure to radiation and they sought the cost of a headset because of that existing injury and to prevent further injury. The insurers contend that plaintiffs alleged only a risk of injury, did not allege they actually sustained bodily injury, and that the cost of the headset was purely economic damages and not the result of any alleged bodily injury.

Because all of the complaints involved in *Samsung* are also involved in this case, we find our analysis in *Samsung* helpful on this issue. In *Samsung*, we concluded the *Pinney* complaints alleged "bodily injury" because the complaints contained allegations of present "biological injury"—or injury to their bodily cells—each time plaintiffs were exposed to radiation emitted from their cell phones when used without a headset:

Defendants knew or should have known that their [cell phones] emit radio frequency radiation (RFR) from the antenna that causes an adverse cellular reaction and/or cellular dysfunction ("biological injury") through its adverse health effect on: calcium ion distribution across the cell membrane, melatonin production, neurological function, DNA (single and double strand breaks and chromosome damage), enzyme activities, cell stress and gene transcription, and the permeability of the blood brain barrier (collectively hereinafter sometimes described as "the health risk" and/or "the biological effects").

. . .

Each time a [cell phone] user makes or receives a call, a wireless signal is transmitted from the [cell phone] antenna to the nearest cell tower or from the nearest cell tower to the [cell phone] antenna, respectively, thereby exposing the [cell phone] user to RFR.

. . .

Each time plaintiff used the [cell phone] in the customary position, the antenna was located next to plaintiff[']s head.

. . .

Each time plaintiff used the [cell phone], he was exposed to RFR which emanated from the antenna, thereby subjecting plaintiff to RFR and, in the absence of a

headset, to RFR[']s biological effects and the risks to human health arising therefrom.

. . .

At all relevant times Defendants knew or should have known that Class Plaintiffs are exposed to RFR while using a [cell phone] and as a result are at increased risk for biological injury.

Each of the *Pinney* complaints contained these allegations, which stated plaintiffs were exposed to radiation and its biological effects each time they used their cell phones without a headset. As we did in *Samsung*, we conclude these allegations are sufficient to state a claim potentially within the "bodily injury" coverage of the policies at issue in this appeal.

■ We now turn to whether the plaintiffs sought "damages because of bodily injury." We also addressed this precise issue in *Samsung*, analyzing the same complaints at issue here. In *Samsung*, we concluded the definition of "damages"[4] contained in the policies at issue in that case did not expressly include or exclude the cost of a headset as "damages because of bodily injury." *Samsung*, 202 S.W.3d at 383, 2006 WL 2391095 at *8. We analyzed the meaning of "because of" and concluded that the damages must be by reason of or on account of the bodily injury. *Id.*, 202 S.W.3d at 381–83, 2006 WL 2391095 at *7–8. Because the complaints alleged that plaintiffs were exposed to harmful radiation which caused an "adverse cellular reaction" or "cellular dysfunction" when they used the cell phones without a headset, we concluded the damages sought—cell phone headsets—were sought "on account of" or "by reason of" the plaintiffs' exposure to radiation from the cell phones. *Id.*, 202

S.W.3d at 382, 2006 WL 2391095 at 8. The same *Pinney* complaints are involved in this appeal, and we know of no reason to reach a different conclusion. Accordingly, we conclude the *Pinney* complaints sought "damages because of bodily injury" for purposes of the insurance policies involved in this case.

■ Our analysis in *Samsung* of the *Dahlgren* lawsuit is also applicable here. In *Samsung*, we concluded the *Dahlgren* complaint did not seek "damages because of bodily injury" because that complaint expressly disclaimed damages for personal injury when it stated:

This action does not assert personal injury claims, such as claims related to the harmful physical effects that result from any class member's *use* of [cell phones] . . . Plaintiff and the Class seek economic and related equitable relief.

*Id.*, 202 S.W.3d at 383, 2006 WL 2391095 at *8–9. Based on our analysis in *Samsung*, we also conclude the *Dahlgren* complaint did not allege "bodily injury" and did not seek "damages because of bodily injury" for purposes of the insurance policies involved in this appeal.

One additional complaint is involved here that was not involved in *Samsung*— the *Naquin* class action. In *Naquin*, the plaintiffs alleged:

[cell phones] expos[e] individuals to unwanted RFR and in the absence of headsets . . . fail to protect users from and exposure to RFR which creates health risks and adverse effects by causing nerve damage, cellular damage, cellular dysfunction and/or other injury to humans.

---

4. The Federal policies at issue in this case and in *Samsung* further defined damages, but that definition did not address the precise issue involved in these appeals. The absence of a similar definition from the Zurich and National Union policies at issue here does not affect our analysis of this issue.

\* \* \*

[cell phones] emit unseen RFR which enters the users' brain ... exposing plaintiffs and all users to risks of damage, injury to their health and well-being and unexpected changes in their physiology ... The demonstrated risks include cellular damage and other adverse affects.

\* \* \*

... plaintiff and other [cell phone] users are exposed to RFR which causes physical effects, changes and the risk of long term injury including the potential for very significant long term health problems.

The *Naquin* plaintiffs also alleged that the cell phone manufacturers' failure to incorporate a headset design into their phones as a standard feature "unnecessarily continu[ed] to expose users to the non-apparent assault on their head, skull and brain [ ] due to the exposure to RFR through the antenna." And that to avoid the impact of the exposure to the radiation on the head, skull and brain and to render the cell phones safe, the plaintiffs would be required to purchase headsets for use with the cell phones.

A liberal reading of the complaint shows the *Naquin* plaintiffs alleged, as did the *Pinney* plaintiffs, that they were injured when the radiation entered their heads, skulls and brains through the cell phones' antennas when used without headsets. As we did with the *Pinney* complaints, we conclude the *Naquin* plaintiffs sought a headset "because of bodily injury" because they sought the headset to render the cell phones safe and to avoid further "unwanted alterations of physiology and health effects."

We conclude the *Pinney, Farina, Gilliam, Gimpelson,* and *Naquin* complaints potentially state a claim for "damages because of bodily injury" triggering the in-surers' duty to defend Nokia in the underlying lawsuits. We conclude the *Dahlgren* complaint does not state a claim for "damages because of bodily injury" and that the insurers' duty to defend Nokia was not triggered by that complaint.

### 3. Does an Exclusion Apply?

The insurers argue that even if the class actions alleged "bodily injury" and sought "damages because of bodily injury," they nevertheless are under no duty to defend Nokia because several "business risk" exclusions apply to preclude coverage. We disagree. The exclusions upon which the insurers base their arguments are exclusions for "property damage to your product," "property damage to impaired property," and damages for the recall of the product. The underlying actions did not contain allegations of property damage to the cell phones or to "impaired property" (defined as "tangible property, other than your product or your work") or damages for the recall of the cell phones. And the case law upon which the insurers rely involved claims for property damages, not damages for bodily injury. *See, e.g., Joe Banks Drywall & Acoustics, Inc. v. Transcon. Ins. Co.,* 753 So.2d 980 (La.Ct.App.2000) (property damages for stained vinyl flooring); *Ins. Co. of N. Am. v. Nat'l Am. Ins. Co. of Calif.,* 37 Cal. App.4th 195, 43 Cal.Rptr.2d 518 (1995) (property damages for construction defects in roofing materials); *Ryan Homes, Inc. v. Home Indem. Co.,* 436 Pa.Super. 342, 647 A.2d 939 (1994) (property damages for defective roofing materials); *Century I Joint Venture v. U.S. Fid. & Guar. Co.,* 63 Md. App. 545, 493 A.2d 370 (1985) (property damages for faulty design and construction of condominium). As a result, these exclusions do not apply to preclude coverage for damages because of bodily injury.

## CONCLUSION

Applying the eight corners rule, we conclude the trial court correctly ruled that Zurich, Federal, and National Union owed no duty to defend or indemnify Nokia in the *Dahlgren* lawsuit. Accordingly, we affirm that part of the trial court's judgment awarding summary judgment in favor of Zurich, Federal, and National Union regarding the *Dahlgren* lawsuit.

We further conclude Zurich, Federal, and National Union owe a duty to defend Nokia in the *Pinney, Farina, Gilliam, Gimpelson,* and *Naquin* lawsuits. Because of our decision on the duty to defend, we also conclude the trial court's ruling that the insurers had no duty to indemnify Nokia was premature. *See Gehan Homes, Ltd.,* 146 S.W.3d at 837. Accordingly, we reverse that part of the trial court's judgment awarding summary judgment in favor of Zurich, Federal, and National Union and render that Zurich, Federal, and National Union owe Nokia a duty to defend regarding the *Pinney, Farina, Gilliam, Gimpelson,* and *Naquin* lawsuits; and we reverse and remand that part of the trial court's judgment awarding summary judgment in favor of Zurich, Federal, and National Union on the duty to indemnify Nokia regarding the *Pinney, Farina, Gilliam, Gimpelson,* and *Naquin* lawsuits and remand for further proceedings consistent with this opinion.